COURT OF APPEALS









COURT
OF APPEALS

EIGHTH
DISTRICT OF TEXAS

EL
PASO, TEXAS

 

CHRISTOPHER MICHAEL SAWYER,              )

                                                                              )              
No.  08-04-00204-CR

Appellant,                          )

                                                                              )                    Appeal from the

v.                                                                           )

                                                                              )                
338th District Court

THE STATE OF TEXAS,                                     )

                                                                              )             
of Harris County, Texas

Appellee.                           )

                                                                              )                     (TC# 966280)

                                                                              )

 

 

O
P I N I O N

 

This is an appeal
from a conviction for the felony offense of possession of a controlled
substance, methamphetamine.  Appellant
pled guilty and was sentenced by the trial court to 5 years= probation and a fine of $1,000.  On appeal, Appellant challenges the trial
court=s denial
of his motion to suppress the evidence seized. 
We affirm.








At the motion to
suppress hearing, Stephanie Scruggs, the manager of the Kroger located at
Cypresswood and 249, testified that on October 28, 2003, she and a coworker by
the name of Alicia, were outside the store taking a break when a man, later
identified as the Appellant, walked up and asked if the store was still
open.  As he entered the store, both she
and Alicia saw the butt of a gun sticking out of the back of his pants.  Ms. Scruggs told Alicia to stay outside and
call the police.  Ms. Scruggs was then
called back into the store, where a customer, the Appellant, needed assistance.

Appellant was
looking for a lighter and butane and as Ms. Scruggs was helping him locate
these items, another customer approached the register.  While Ms. Scruggs helped the other customer,
Appellant remained behind the counter briefly and then ran out of the
store.  Ms. Scruggs=s described Appellant=s actions as strange and she thought
that maybe he was nervous.  While
Appellant was in the store, Ms. Scruggs did not see the gun.  After Appellant left, Ms. Scruggs went
outside to make sure Alicia was okay. 
Alicia was still on the phone with the police.

Harris County
Sheriff=s
Department Deputy Brian Raven testified that on the day in question, he
received a call from dispatch around midnight in reference to a weapon
disturbance at Cypresswood and Tomball Parkway. 
Deputy Raven was told by dispatch the suspect was a white male, with a
shaved head, wearing a red shirt and blue jeans.  As he arrived at the scene, he was told by
dispatch that the suspect was leaving the scene in what was first described as
a silver, and then corrected to a green car. 
At the same time, as he was exiting the patrol car, Deputy Raven
observed a vehicle leaving the Kroger parking lot headed toward Cypreswood
Drive.  He informed dispatch that he had
seen the vehicle exit and was en route behind the car.  Deputy Raven saw the vehicle traveling
westbound on Cypresswood and then proceeded to pull in behind the vehicle and
initiated a traffic stop.  The stop was
about 600 to 800 yards from the Kroger. 
While he was following the vehicle, he testified that the car was not in
his view the entire time, there were periods where there was a building between
him and the vehicle.








Once Deputy Raven
initiated the stop, Appellant pulled into the parking lot of a Sonic and before
he could even grab a radio, the Appellant exited his vehicle.  Appellant did not run or try to evade the
deputies.  Deputy Raven and his partner
got out the patrol car, drew their guns, and ordered the Appellant to get on
the ground.  Deputy Raven testified that
the Appellant did not comply; he speculated that this may have been because the
ground was wet.  Deputy Raven testified
that there was some communication between them and the Appellant, but that he
could not testify as to what that communication entailed.  Deputy Raven=s
partner walked up to the Appellant, took him to the ground, and handcuffed
him.  No weapon was found in Appellant=s person.  According to Deputy Raven, Appellant at this
point was not being arrested.

Appellant was then
placed in the back of the patrol car. 
Once he was placed in the patrol car, Deputy Raven testified that
Appellant was being detained.  Deputy
Raven and his partner proceeded to search Appellant=s
car.  Appellant was not asked whether
they could search his car, nor did Appellant consent to the search.  He testified that a weapon was never found,
but instead, a baggy with a substance they believed to be methamphetamine was
found in the console between the driver and the passenger seat; the console was
closed.  They also found a jar containing
marijuana in plain view in the back seat. 
Deputy Raven testified that they were already inside the car when they
found the jar of marijuana and that they found the marijuana first.  








Deputy Raven
testified that when the dispatch call went out, there was no way of knowing
whether the person with the gun had a license and that he did not have a chance
to interview the reportee, because as soon as he arrived at the Kroger to do
so, he witnessed the green vehicle leaving the parking lot.  He was not able to interview anyone before
stopping the Appellant; the only conversation he had was with the dispatcher.  Deputy Raven agreed with defense counsel that
at this point, they were detaining the Appellant and investigating the weapons
disturbance complaint communicated by the dispatcher.

Next to testify
was Deputy Kirt Fickessen.  Deputy
Fickessen testified that no one was interviewed prior to pursuing any type of
investigation on the case.  He testified
that the dispatch call was concerning a weapons disturbance and that this did
not necessarily mean that a weapon had been discharged.  The dispatch only informed them that a white
male was carrying a weapon and he believed that a robbery was in progress.  Deputy Fickessen testified that they both
drew their weapons on the Appellant because they thought he had a weapon.  Deputy Fickessen testified that when he
placed Appellant on the ground, he asked him where the weapon was and that
Appellant responded that he did not have a weapon.  Pursuant to the investigation, Deputy
Fickessen proceeded to search the vehicle. 
He testified that there was no weapon found and that at the time they
searched his car, Appellant was detained. 









Appellant also
testified at the motion to suppress hearing. 
Appellant testified that he went to the Kroger to buy a lighter.   He testified that he pulled right up to two
women standing in front of the store smoking and asked if the store was still
open.  Once inside the store,
Ms. Scruggs helped him but he was not able to find the lighter he was
looking for.  He then left the store and
because he was running late to meet someone, he testified that he probably
walked fast and sprinted out.  He started
to pull out of the parking lot and eventually, a patrol car pulled him
over.  He pulled into the first space
available which was the parking lot of a Sonic. 
He turned off his ignition and pulled out his license and his keys, and
then he noticed that the officers already had their guns drawn.  They told him to get on the ground, but did
not indicate to him why he was being arrested. 
He was asked to get on the ground about three or four times and while he
did get down on his knees, the officers told him all the way down; he then
asked if in the water because he testified that there were puddles on the
ground.  He testified that he got pressed
down into the concrete.  He was then
handcuffed and placed in the back of the patrol car.  He testified that he was asked where the gun
was and if there was any reason why Ms. Scruggs was saying he had a gun stuck
in his pants.  He testified that the only
thing he could think of was that he was standing with his hands in the back of
his pants, and that maybe his belt was showing. 
He testified that he does not own a gun and has never owned one.  He additionally testified that the deputies
did not have his consent to search the car and that they did not ask for it
either.

At the conclusion
of the motion to suppress hearing, the trial court entered an order denying
Appellant=s
motion.  Having retained his right to
appeal the trial court=s
denial of his motion to suppress, Appellant timely filed this appeal.

DISCUSSION

In his sole issue,
Appellant asserts the trial court abused its discretion in denying 

his motion to suppress evidence
obtained as a result of the search of his vehicle.  Specifically, Appellant contends that he was
stopped based on only the dispatcher=s
call, and for no other reason. 
Therefore, Appellant asserts that reasonable suspicion was lacking to
stop Appellant=s
vehicle, making the subsequent search of his vehicle illegal.

Standard
of Review








A trial court=s ruling on a motion to suppress is
generally reviewed for an abuse of discretion. 
Villarreal v. State, 935 S.W.2d 134, 138 (Tex.Crim.App. 1996); Gordon
v. State, 4 S.W.3d 32, 35 (Tex.App.‑-El Paso 1999, no pet.).  In reviewing a motion to suppress, we must
give almost total deference to the trial court=s
determination of historical facts, especially when the court=s findings are based on an evaluation
of credibility and demeanor.  State v.
Ross, 32 S.W.3d 853, 856 (Tex.Crim.App. 2000); Carmouche v. State,
10 S.W.3d 323, 327 (Tex.Crim.App. 2000); Guzman v. State, 955 S.W.2d 85,
89 (Tex.Crim.App. 1997).  Where the trial
court has made no explicit findings of historical facts, as in this case, the
evidence must be reviewed in a light most favorable to the trial court=s ruling.  Carmouche, 10 S.W.3d at 327‑28.  We review de novo the trial court=s conclusions of law and the
application of those principles to the facts which do not turn on an evaluation
of credibility and demeanor, including Fourth Amendment search and seizure
law.  Ross, 32 S.W.3d at 856; Guzman,
955 S.W.2d at 89; Carmouche, 10 S.W.3d at 327.  Although great weight should be given to the
inferences drawn by the trial judges and law enforcement officers,
determinations of reasonable suspicion and probable cause are reviewed de novo
on appeal.  Guzman, 955 S.W.2d at
87, citing Ornelas v. United States, 517 U.S. 690, 699, 116 S.Ct. 1657,
134 L.Ed.2d 911 (1996); see Loesch v.State, 958 S.W.2d 830, 831-32
(Tex.Crim.App. 1997).  However, the trial
court=s ruling
will not be reversed on appeal, even if made for the wrong reason, if the
ruling is supported by the record and correct on any theory of law applicable
to the case.  Villareal, 935
S.W.2d at 138; see also Willover v. State, 70 S.W.3d 841, 845
(Tex.Crim.App. 2002); Ross, 10 S.W.3d at 855‑56.








The stopping of a
vehicle constitutes a Aseizure@ for Fourth Amendment purposes.  United States v. Martinez-Fuerte, 428
U.S. 543, 556-58, 96 S.Ct. 3074, 3082-83, 49 L.Ed.2d 1116 (1976); United
States v. Brignoni-Ponce, 422 U.S. 873, 878, 95 S.Ct. 2574, 2578, 45
L.Ed.2d 607 (1975); State v. Sanchez, 856 S.W.2d 166, 168 (Tex.Crim.App.
1993).  The Fourth Amendment protects
people, not places, and wherever an individual may harbor a reasonable Aexpectation of privacy,@ he is entitled to be free from unreasonable
governmental intrusion, and the burden shifts to the State to prove its
reasonableness.  Katz v. United States,
389 U.S. 347, 351, 88 S.Ct. 507, 511, 19 L.Ed.2d 576 (1967); Russell v.
State, 739 S.W.2d 923, 929 (Tex.App.--Dallas 1987)(Opin. on remand), pet.
dism=d,
improvidently granted, 772 S.W.2d 129 (Tex.Crim.App. 1989).  

It is well settled
that a police officer may stop and briefly detain persons suspected of criminal
activity, but the officer must possess a reasonable suspicion to justify this
investigative detention.  See Davis v.
State, 947 S.W.2d 240, 242-44 (Tex.Crim.App. 1997)(discussing Terry v.
Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968)).  The totality of the circumstances must be
examined when determining the reasonableness of an investigative stop.  See Woods v . State, 956 S.W.2d 33, 38
(Tex.Crim.App. 1997); Stewart v. State, 22 S.W.3d 646, 648
(Tex.App.--Austin 2000, pet. ref=d);
State v. Garcia, 25 S.W.3d 908, 912 (Tex.App.--Houston [14th Dist.]
2000, no pet.).  In determining whether
reasonable suspicion existed, we look to the facts available to the officer at
the moment of detention.  See Terry,
392 U.S. at 21-22, 88 S.Ct. at 1880; Davis, 947 S.W.2d at 243; Garcia,
25 S.W.3d at 912.  








In this instance,
the Appellant contends that the information given to the officer by the store
clerk is on the same footing as an anonymous tip and therefore insufficient to
create reasonable suspicion.  The State
on the other hand, argues that the tip that was provided was not from an
anonymous or unidentifiable informant. 
Appellant is correct in stating that an anonymous tip by itself is
insufficient to support a finding of reasonable suspicion.  A tip by an unnamed informant of undisclosed
reliability, standing alone, rarely will establish the requisite level of
suspicion necessary to justify an investigative detention.  See Florida v. J.L., 529 U.S. 266,
269, 120 S.Ct. 1375, 1378, 146 L.Ed.2d 254 (2000); Alabama v. White, 496
U.S. 325, 329, 110 S.Ct. 2412, 2415-16, 110 L.Ed.2d 301 (1990).  However, there must be some further indicia
of reliability, some additional facts from which a police officer may
reasonably conclude that the tip is reliable and a detention is justified.  State v. Sailo, 910 S.W.2d 184,188
(Tex.App.--Fort Worth 1995, pet. ref=d).  There are situations in which an anonymous
tip, suitably corroborated, exhibits sufficient indicia of reliability from
which a police officer may reasonably conclude that a detention is
justified.  See J.L., 529 U.S. at
270, 120 S.Ct. at 1378; White, 496 U.S. at 329, 110 S.Ct. 2415.  When an unnamed informant puts himself or
herself in a position where he or she could easily be accountable, the tip
becomes more reliable.  See Sailo,
910 S.W.2d at 188.








Contrary to
Appellant=s
assertions, Deputy Raven had more to go on than the information provided by the
store clerk.  Here, Deputy Raven received
a call from dispatch around midnight regarding a weapons disturbance based on
information provided by Alicia, the store clerk.  Alicia provided a description of the person,
including what the suspect was wearing, and the vehicle the suspect was seen
entering and driving away.  Upon
receiving the dispatch and responding to the call, Deputy Raven entered the
parking lot of the store, observed a vehicle matching the description given
leaving the parking lot simultaneously as he was receiving the exact same
information from dispatch.  Deputy Raven
followed the vehicle as it left the parking lot and headed down a public
road.  He initiated the stop 600 to 800
feet away from the Kroger.  Unlike an
anonymous caller, the store clerk in this case identified herself and her
location and was providing some of the information at the same time that Deputy
Raven was witnessing the same acts.  The
reliability of the information provided by the store clerk was increased.  See Sailo, 910 S.W.2d at 188.  We find that Deputy Raven had reasonable
suspicion from the call made by the store clerk and from his own observations
which corroborated the information provided by the store clerk.  Deputy Raven had reasonable suspicion to pull
the vehicle over.

Once the deputies
initiated a stop of Appellant=s
vehicle,  Appellant asserts that the
conduct of the officers in this case constituted an arrest.  Appellant argues that the deputies lacked
probable cause to arrest him.

A person is
arrested when he has been actually placed under restrain or taken into custody
by an officer.  See Tex.Code Crim.Proc.Ann. art. 15.22
(Vernon 2005).  Whether a detention is an
investigative detention or an arrest depends upon the facts and circumstances
surrounding the detention.  Amores v.
State, 816 S.W.2d 407, 412 (Tex.Crim.App. 1991); Hoag v.State, 728
S.W.2d 375, 378-79 (Tex.Crim.App. 1987). 
A suspect is not necessarily subjected to an arrest when the officers
draw their weapons and have the suspect exit the vehicle.  See Marsh v. State, 684 S.W.2d 676,
679 (Tex.Crim.App. 1984).  

Here, Appellant
was pulled over by the officers, and immediately thereafter, Appellant exited
his vehicle, forcing the deputies to draw their guns toward him.  Appellant was ordered to get on the ground
several times but refused to do so; he was then forced to get on the ground and
subjected to a pat-down search.  He was
then handcuffed, and placed in the back of the patrol car.  Given the backdrop of this particular stop, a
weapons disturbance call, we find that these actions are more consistent with
an investigatory detention than with an arrest. 
Therefore, we will continue to examine the trial court=s decision based upon whether there was
reasonable suspicion to conduct a weapons search of the vehicle.








A police officer
is authorized, for his own protection, to conduct a reasonable search for
weapons where he has reason to believe that he is dealing with an armed and
dangerous individual, regardless of whether he has probable cause to arrest
that individual for a crime.   See Terry v. Ohio, 392 U.S. 1, 27, 88
S.Ct. 1868, 1883, 20 L.Ed.2d 889 (1968). 
A police officer investigating a suspect after a roadside stop may
conduct a protective search of the automobile=s
passenger compartment if he has a reasonable belief, based upon specific and
articulable facts and the inferences rationally drawn from those facts, that
the detainee may pose a threat to him.   See
Michigan v. Long, 463 U.S. 1032, 1050‑51, 103 S.Ct. 3469, 3480-81, 77
L.Ed.2d 1201 (1983);  Goodwin v. State,
799 S.W.2d 719, 727‑28 (Tex.Crim.App.1990).  The search must be limited to those areas in
which a weapon may be placed or hidden.  See
Long, 463 U.S. at 1049, 103 S.Ct. 3481. 
The police officer may conduct the protective search for weapons
contemporaneously with a temporary detention when he observes conduct that
leads him to reasonably conclude that a crime may be taking place and that the
person with whom he is dealing may be armed and dangerous.  See Worthey v. State, 805 S.W.2d 435,
437 (Tex.Crim.App. 1991).








The record
indicates that Deputy Raven was responding to a weapons disturbance
dispatch.  Here, the deputies had reason
to believe Appellant was armed and dangerous in light of the caller=s statement that she had seen the Appellant
enter the store with a gun in his pocket.  See Vannatta v. State, 773 S.W.2d 771, 774
(Tex.App.--Corpus Christi 1989), pet. dism=d,
improvidently granted, 796 S.W.2d 190 (Tex.Crim.App. 1990).  Upon initiating the stop of Appellant=s vehicle, Deputy Raven testified that
before he could even grab his radio, Appellant had already exited the
vehicle.  Both he and Deputy Fickessen
immediately drew their weapons and ordered the Appellant to get on the
ground.  Repeatedly, the Appellant was
instructed to get on the ground and he did not respond.  Appellant=s
immediate exit from the vehicle, the deputies knowledge of the Appellant=s possession of a weapon, and Appellant=s lack of compliance with the deputies
order could have reasonably led the deputies to believe that the Appellant was
armed and dangerous.  The deputies, drawing
an inference from Appellant=s
erratic exit of his vehicle that he was potentially armed and dangerous, were
justified in taking action to neutralize the situation.  Having decided already that Appellant was not
arrested at this point, the search of the vehicle was lawfully pursuant to a
weapons search.

In sum, the record
contains evidence from which the trial court could have held that (1) the
deputies had reasonable basis to fear for their safety, and (2) the search was
restricted to those areas wherein a weapon could be found.  Having found that the officers had reasonable
suspicion to stop the Appellant, we find that Appellant=s
subsequent search of his vehicle was legal pursuant to a weapons search.  In so doing, we find that the trial court did
not err in denying Appellant=s
motion to suppress.  We therefore
overrule Issue One.

Accordingly, we
affirm the trial court=s
judgment.

 

 

 

October
13, 2005

DAVID WELLINGTON
CHEW, Justice

 

Before Barajas, C.J., McClure, and Chew, JJ.

 

(Do Not Publish)