The STATE of Texas, Appellant,

v.

Andrew GARCIA, Sean Robert Arterburn, and Fernando Ramos, Appellees.

Nos. 14–00–00354–CR to 14–00–00356–CR.

Court of Appeals of Texas, Houston (14th Dist.).

Aug. 10, 2000.

---

Victor R. Blaine, Houston, for appellant.

Jessica J. Pulcher, Angleton, for appellee.

Panel consists of Justices MAURICE E. AMIDEI, ANDERSON and FROST.

## OPINION

KEM THOMPSON FROST, Justice.

In this accelerated appeal, the State of Texas challenges the trial court's suppression of all evidence obtained during the investigative detention leading to the appellees' arrests. In its sole point of error, the State argues that there was sufficient reasonable suspicion to justify an investigative detention in this case. We agree and, for the reasons set out below, we reverse the trial court's order.

### BACKGROUND

Appellees Andrew Garcia, Sean Robert Arterburn, and Fernando Ramos were arrested and charged with possession of more than two but less than four ounces of marijuana. According to the uncontroverted evidence in this case, at around 7:00 p.m. on Saturday, June 12, 1999, an individual "flagged down" Patrol Corporal Robert Taylor of the Alvin Police Department in a gas station/convenience store parking lot. Officer Taylor did not know the individual, but described him as a Hispanic male in his early thirties, who appeared to be about 5' 7" or 5' 8" in height, and about 170 or 180 pounds in weight. The individual pointed to a vehicle parked nearby in the convenience store parking lot and reported that he had witnessed three "boys" getting "alcohol" from their car. The witness described that car as a green Chevrolet Cavalier. After the witness pointed out the vehicle, Officer Taylor observed three youthful looking individuals in the car. Just as the car's occupants were getting ready to leave, the officer parked his patrol car directly behind their vehicle. When the driver, Garcia, was unable to produce a driver's license for the

purpose of identification, Officer Taylor asked him to step out of the car. At that time, the officer observed "signs of intoxication." Officer Taylor asked Garcia for his permission to search the car, and after Garcia gave his consent, the officer found marijuana under the "front driver's seat."

The individual who reported the alleged crime did not specify what type of alcohol the youths allegedly possessed. Officer Taylor assumed the substance was beer because the convenience store at that location sold beer for "off-premises" consumption. A search of the car revealed no alcohol, only marijuana. Officer Taylor observed that the youths were parked directly in front of a trash can, but he did not search that receptacle for empty beer cans. The witness who alerted the officer to the appellees' activity left shortly thereafter. The patrolman did not get the individual's name or license plate number.

Following the suppression hearing, Garcia's attorney argued that there was no "probable cause to detain" the defendants and so the subsequent search, although made with consent, was a "fruit of the first illegality of the detention." The defense pointed out that there was no testimony or evidence that the arrest was made in a "suspicious place" or under "circumstances which reasonably show that they have been guilty of some felony or breach of the peace or [were] about [to] commit some offense against the laws." The State argued that, based on the totality of the circumstances, there was sufficient "reasonable suspicion" for an investigative detention.

The trial court found that the convenience store parking lot where the appellees were detained was a public place, and that the establishment was licensed to sell alcohol for off-site consumption. The trial court also noted that, although the appellees were not the legal drinking age of twenty-one at the time of their arrest, "they were not like fourteen and fifteen year olds." The trial court concluded therefore that there "could have just as well been [an] innocent permissible legal activity" going on and found that there was "no probable cause/reasonable suspicion for the initial stop." Accordingly, the trial court granted the appellees' motions to suppress.

## STANDARD OF REVIEW

In reviewing a ruling on a motion to suppress evidence, appellate courts afford almost total deference to the trial court's determination of the historical facts, while reviewing *de novo* mixed questions of law and fact not turning on an evaluation of credibility and demeanor. *See Guzman v. State*, 955 S.W.2d 85, 87–88 (Tex.Crim.App.1997). Questions of reasonable suspicion and probable cause are reviewed *de novo* on appeal. *See id.* at 87 (citing *Ornelas v. United States*, 517 U.S. 690, 116 S.Ct. 1657, 134 L.Ed.2d 911 (1996)). This standard applies because "the trial judge is not in an appreciably better position than the reviewing court to make that determination." *Id.* In this instance, the relevant facts are not in dispute and the resolution of this appeal does not turn on an evaluation of the credibility of a particular witness. Therefore, we must review the trial court's ruling *de novo* and determine whether there was sufficient reasonable suspicion to detain the defendants/appellees for the purpose of an investigation.

## INVESTIGATIVE DETENTIONS— REASONABLE SUSPICION

An investigative detention occurs when a citizen is confronted by a police officer who, under a display of law enforcement authority, temporarily detains the person for purposes of an investigation. *See Johnson v. State*, 912 S.W.2d 227, 235 (Tex.Crim.App.1995). It is well settled that law enforcement officers may stop and briefly detain persons suspected of criminal activity on less information than is constitutionally required for probable cause to arrest. *See Terry v. Ohio*, 392 U.S. 1, 22, 88 S.Ct. 1868, 20 L.Ed.2d 889

(1968); *Davis v. State,* 947 S.W.2d 240, 244 (Tex.Crim.App.1997); *Garza v. State,* 771 S.W.2d 549, 558 (Tex.Crim.App.1989). However, it is equally well established that to justify an investigative detention, the officer must have reasonable suspicion. *See Terry,* 392 U.S. at 21, 88 S.Ct. 1868; *Davis,* 947 S.W.2d at 242–43. "Reasonable suspicion" requires that the officer have specific articulable facts which, in light of his experience and personal knowledge, together with rational inferences from those facts, would reasonably warrant the intrusion on the freedom of the detainee for further investigation. *See Comer v. State,* 754 S.W.2d 656, 657 (Tex.Crim.App.1986); *Garza,* 771 S.W.2d at 558.

The existence of reasonable suspicion is determined under an objective standard, namely, whether the facts available to the officer at the moment of seizure or search warrant a person of reasonable caution in the belief that the action taken was appropriate. *See Terry,* 392 U.S. at 21–22, 88 S.Ct. 1868; *Davis,* 947 S.W.2d at 243. These "specific articulable facts" must create a reasonable suspicion that some activity out of the ordinary is occurring or has occurred, some suggestion to connect the detained person with the unusual activity, and some indication that the activity is related to a crime. *See Florida v. Royer,* 460 U.S. 491, 497, 103 S.Ct. 1319, 75 L.Ed.2d 229 (1983); *Davis,* 947 S.W.2d at 244. Subjective good faith on the part of the arresting officer is not enough. *See Terry,* 392 U.S. at 21–22, 88 S.Ct. 1868. The officer making an investigative detention or stop must be able to articulate something more than an inchoate and unparticularized suspicion or hunch. *See id.* at 27, 88 S.Ct. 1868; *Williams v. State,* 621 S.W.2d 609, 612 (Tex.Crim.App.1981). An investigative detention not based upon reasonable suspicion is unreasonable and, thus, violates the Fourth Amendment. *See Davis,* 947 S.W.2d at 243.

Here, the trial court determined that there was no reasonable suspicion to detain the defendants because their conduct was as consistent with "innocent permissible legal activity" as with criminal activity. However, both the United States Supreme Court and the Texas Court of Criminal Appeals have specifically rejected the "as consistent with innocent activity as with criminal activity" test upon which the trial court relied. *See United States v. Sokolow,* 490 U.S. 1, 109 S.Ct. 1581, 104 L.Ed.2d 1 (1989); *Woods v. State,* 956 S.W.2d 33, 38 (Tex.Crim.App.1997). The Texas Court of Criminal Appeals has made it clear that the determination of reasonable suspicion for an investigative detention turns on a review of the totality of the circumstances in a given case, stating:

> We hold that the reasonableness of a temporary detention must be examined in terms of the totality of the circumstances and will be justified when the detaining officer has specific articulable facts, which taken together with rational inferences from those facts, lead him to conclude that the person detained actually is, has been, or soon will be engaged in criminal activity.

*Woods,* 956 S.W.2d at 38; *see also United States v. Mendenhall,* 446 U.S. 544, 557, 100 S.Ct. 1870, 1879, 64 L.Ed.2d 497 (1980) (holding that the reasonableness of an investigative detention turns on the totality of the circumstances in each case). Under this standard, the articulable facts on which the officer relied need only support a reasonable belief that activity out of the ordinary is occurring or has occurred, that the detainee is connected to the unusual activity, and that the unusual activity is related to crime. *See Woods v. State,* 970 S.W.2d 770, 773 (Tex.App.—Austin 1998, pet. ref'd) (citing *Davis,* 947 S.W.2d at 244).

In this instance, the officer relied on information provided by an unidentified individual who claimed to have witnessed criminal activity. A tip by an unnamed informant of undisclosed reliability, standing alone, rarely will establish the requisite level of suspicion necessary to justify an investigative detention. *See*

*Florida v. J.L.*, 529 U.S. 266, 120 S.Ct. 1375, 1378, 146 L.Ed.2d 254 (2000) (involving an anonymous telephone tip); *Alabama v. White*, 496 U.S. 325, 329, 110 S.Ct. 2412, 2415–16, 110 L.Ed.2d 301, 308 (1990)(same). However, there are situations in which an anonymous tip, suitably corroborated, exhibits sufficient indicia of reliability from which a police officer may reasonably conclude that a detention is justified. *See J.L.*, 529 U.S. at ——, 120 S.Ct. at 1378; *White*, 496 U.S. at 329, 110 S.Ct. 2412. For example, one Texas court has explained that "information from a citizen who confronts an officer in person to advise the officer that a designated individual present on the scene is committing a specific crime should be given serious attention and great weight by the officer." *State v. Sailo*, 910 S.W.2d 184, 188 (Tex.App.—Fort Worth 1995, pet. ref'd) (citing *United States v. Sierra–Hernandez*, 581 F.2d 760, 763 (9th Cir.), *cert. denied*, 439 U.S. 936, 99 S.Ct. 333, 58 L.Ed.2d 333 (1978)). That court noted that a person who is not connected with the police or who is not a paid informant is "inherently trustworthy" when he advises the police a crime is being committed. *See id.* Unlike a person who makes an anonymous telephone call, an individual presenting himself to the officer in person, and doing so while driving a vehicle from which his identity might easily be traced, puts himself in a position to be held accountable for his intervention; thus, the reliability of the information he provides is increased.[1] *See id.* The case now before us is similar because the individual who flagged down Officer Taylor in the convenience store parking lot provided the information in person, and the information he provided was specific as to the time of the alleged criminal activity and precise as to the kind of crime being committed. *See id.* Moreover, there is nothing in the record before us that

would have caused Officer Taylor to doubt the reliability or good faith of the informant tendering the information. The informant, although unknown to the police officer, was sufficiently reliable because he came forward in person, under circumstances that would render him accountable for his intervention, to give information about the crime.

■■■ In addition, the State points out that some of the information the unidentified informant provided was corroborated by the patrol officer's direct observations. In a totality of the circumstances analysis, corroboration by the law enforcement officer necessarily goes to the quality, or reliability, of the information. *See id.* Corroboration by a police officer means, in light of the circumstances, he confirms enough facts so that he may reasonably conclude that the information provided is reliable and a detention is justified. *See id.* (citing *White*, 496 U.S. at 330–31, 110 S.Ct. 2412). Therefore, in this case, the question becomes whether, in the totality of the circumstances and in light of his experience and knowledge, Officer Taylor observed (corroborated) enough of the information the concerned citizen provided, giving that information the weight it deserved in light of its indicia of reliability. If so, the investigative stop of the defendants' vehicle was justified. *See White*, 496 U.S. at 332, 110 S.Ct. 2412; *Sailo*, 910 S.W.2d at 189.

■■■ Based on our review of the totality of the circumstances, in light of the patrolman's experience and knowledge, and giving the concerned citizen's information the weight it deserves in light of its indicia of reliability, we find Officer Taylor corroborated enough facts to justify an investigative stop of the defendants' vehicle. He knew that the convenience store sold beer for off-site consumption. The

---

1. Indeed, the fact that an officer receives his information from an informant who observed the suspect's activity firsthand gives the informant's tip greater weight than an anonymous phone caller. *See Sailo*, 910 S.W.2d at 188 (citing *State v. Adkins*, 829 S.W.2d 900, 901 (Tex.App.—Fort Worth 1992, pet. ref'd)).

defendants were described by a reliable informant, and their actions and youthful appearance were detailed with some particularity. When Officer Taylor confirmed that the vehicle and its passengers matched the description given, he was justified in initiating an investigatory stop. *See Sailo,* 910 S.W.2d at 189. Contrary to the defendants' assertion, Officer Taylor had more to go on than the "bare report of an unknown, unaccountable informant" who neither explained how he knew about the criminal activity nor supplied any basis for his belief that a crime had occurred. *Cf. J.L.,* 529 U.S. at ——, 120 S.Ct. at 1379. Therefore, we hold that there was sufficient reasonable suspicion to justify an investigative detention in this case.

The State's sole point of error is sustained. The trial court's order is reversed and the case is remanded for further proceedings.