*Court of Appeals*
*Fourth Court of Appeals District of Texas*
*San Antonio*



# MEMORANDUM OPINION

No. 04-10-00603-CR

Wesley Houston **LEIFESTE**,
Appellant

v.

The **STATE** of Texas,
Appellee

From the 198th Judicial District Court, Mason County, Texas
Trial Court No. CC-84548
Honorable Stephen B. Ables, Judge Presiding

Opinion by:    Marialyn Barnard, Justice

Sitting:       Sandee Bryan Marion, Justice
               Rebecca Simmons, Justice
               Marialyn Barnard, Justice

Delivered and Filed:  March 2, 2011

AFFIRMED

A jury convicted appellant Wesley Houston Leifeste of driving while intoxicated.  The

trial court sentenced Leifeste to 180 days in jail and a $1,000.00 fine, but suspended the jail term

and placed Leifeste on community supervision for twelve months.  Leifeste appeals, contending:

(1) the trial court erred in denying his motion to suppress, and (2) the evidence is insufficient to support his conviction.[1] We affirm the trial court's judgment.

## BACKGROUND

A brief rendition of the facts is provided here, and we will discuss the facts in more detail within our analysis of the issues. On February 25, 2008, at approximately 5:45 p.m., a fire broke out three miles north of Mason County, Texas. The fire eventually approached Mason County, specifically approaching the property of Glenn Ray "Squeaky" Farmer, a Mason County Road Superintendent. Emergency personnel and equipment from Mason County and surrounding counties were stationed at Farmer's property. Leifeste and his brother, Chadwick, entered Farmer's property, and according to witnesses, were intoxicated, taking pictures, and interfering with the fire fighting operations. It seemed Leifeste and his brother were upset and were questioning emergency personnel as to why so much county equipment was being dedicated to fight a fire on Farmer's property when that equipment had not been used on their property during a fire that occurred approximately a month earlier. Farmer eventually called the Mason County Sheriff's Office and complained about the Leifestes' conduct. Sheriff Clint Low was dispatched to Farmer's property to deal with two intoxicated males who refused to leave. When Sheriff Low arrived, approximately three minutes after the dispatch, he was told by a county employee that the brothers had just left. He was given a description of their vehicle and told they were intoxicated and had been interfering with emergency personnel.

---

[1] Leifeste's original notice of appeal was untimely, and this court dismissed the appeal for want of jurisdiction. *Leifeste v. State*, 04-10-00095-CR, 2010 WL 1492391, at *1 (Tex. App.—San Antonio Apr. 14, 2010, no pet.) (mem. op.) (not designated for publication). Thereafter, Leifeste filed an application for writ of habeas corpus in the trial court seeking an out-of-time appeal, which the trial court granted. *See Rodriguez v. Court of Appeals, Eighth Supreme Judicial Dist.*, 769 S.W.2d 554, 557-58 (Tex. Crim. App. 1989) (holding district court has jurisdiction to grant writ of habeas corpus, and therefore authority to grant out-of-time appeal); *Ex parte Haight*, No. 04-00-00696-CR, 2001 WL 840605, at *1 (Tex. App.—San Antonio Jul. 25, 2001, no pet.) (not designated for publication) (recognizing trial court has original jurisdiction to grant post-conviction habeas relief in misdemeanor cases, including power to grant out-of-time appeal); *see also* TEX. CONST. art. V, § 8; TEX. CODE CRIM. PROC. ANN. art. 11.05 (West 2005).

Sheriff Low, who was riding with a Mason County deputy, turned the car around and headed down the road in the direction given by the county employee. After a very short time–one or two minutes–the sheriff saw a vehicle matching the description given by the county employee and initiated a stop. After talking with Leifeste and his brother, observing open beer cans in the vehicle, and performing a horizontal gaze nystagmus ("HGN") test, Sheriff Low determined both men were intoxicated. Leifeste was ultimately arrested for driving while intoxicated, and his brother was arrested for public intoxication.

Leifeste filed a motion to suppress, arguing the sheriff lacked reasonable suspicion to stop him, thereby rendering the sheriff's observations, statements, and all the test results inadmissible. The trial court overruled the motion, and Leifeste was tried by a jury of his peers. The jury found Leifeste guilty of driving while intoxicated. He appeals from that conviction.

**ANALYSIS**

Leifeste raises two issues on appeal. First, he contends the trial court erred in denying his motion to suppress because there was no reasonable suspicion to detain him. Second, he claims the evidence is insufficient to support his conviction.

***Motion to Suppress***

*Standard of Review*

We review a trial court's ruling on a motion to suppress for abuse of discretion. *State v. Dixon*, 206 S.W.3d 587, 590 (Tex. Crim. App. 2006). Our review is bifurcated. *Amador v. State*, 221 S.W.3d 666, 673 (Tex. Crim. App. 2007); *Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997). When, as here, the record is silent on the reasons for the trial court's denial, i.e., there are no explicit fact findings, and neither party timely requested findings and conclusions from the trial court, we imply the necessary fact findings that would support the trial

court's ruling if the evidence supports those findings. *State v. Garcia-Cantu*, 253 S.W.3d 236, 241 (Tex. Crim. App. 2008). We must view the evidence in the light most favorable to the trial court's ruling, and we will reverse only if the ruling is outside the zone of reasonable disagreement. *Id.* In conducting our review, we give almost total deference to the trial court's resolution of questions of historical fact and mixed questions of law and fact that turn on the weight or credibility of the evidence. *Derichsweiler v. State*, No. PD-0176-10, 2011 WL 222210, at *1 (Tex. Crim. App. Jan. 26, 2011) (citing *Amador v. State*, 221 S.W.3d 666, 673 (Tex. Crim. App. 2007)). We review de novo the trial court's application of the law to the facts. *See id.*; *Weide v. State*, 214 S.W.3d 17, 25 (Tex. Crim. App. 2007). We will sustain the trial court's ruling "if it is reasonably supported by the record and is correct on any theory of law applicable to the case." *Dixon*, 206 S.W.3d at 590.

### *Applicable Law: Reasonable Suspicion*

The Fourth Amendment requires that a warrantless detention of a person that amounts to less than a custodial arrest must be justified by reasonable suspicion. *Derichsweiler*, 2011 WL 222210, at *1; *Ford v. State*, 158 S.W.3d 488, 492 (Tex. Crim. App. 2005). An officer has reasonable suspicion to detain if he has "specific, articulable facts that, when combined with rational inferences from those facts, would lead him to reasonably conclude that a particular person actually is, has been, or soon will be engaged in criminal activity." *Id.* This is an objective standard that disregards the actual subjective intent of the arresting officer and considers, instead, whether there was an objectively justifiable basis for the detention. *Derichsweiler*, 2011 WL 222210, at *1. "It also looks to the totality of the circumstances; those circumstances may all seem innocent enough in isolation, but if they combine to reasonably suggest the imminence of criminal conduct, an investigative detention is justified." *Id.* Under

this standard, the articulable facts on which the officer relied need only support a reasonable belief that activity out of the ordinary is occurring or has occurred, that the person detained is connected to the activity, and that the activity is related to crime. *State v. Garcia*, 25 S.W.3d 908, 912 (Tex. App.—Houston [14th Dist.] 2000, no pet.). Moreover, the detaining officer does not have to be personally aware of every fact that objectively supports reasonable suspicion. *Derichsweiler*, 2011 WL 222210, at \*1. Rather, "the cumulative information known to the cooperating officers at the time of the stop is to be considered in determining whether reasonable suspicion exists." *Id*. Even information known by a 911 police dispatcher is to be considered because a dispatcher is generally regarded as a "cooperating officer" for purposes of a reasonable suspicion determination. *Id*. Finally, and particularly relevant to this case, information provided to police by a "citizen-informant" who identifies himself and may be accountable for the accuracy and truth of his report may be regarded as reliable. *Id*. When information is provided by a known citizen-informant, the only question is whether the information provided by such person, "viewed through the prism of the detaining officer's particular level of knowledge and experience, objectively supports a reasonable suspicion to believe that criminal activity is afoot." *Id*.

*Application*

The first witness at the motion to suppress hearing was Glenn Ray "Squeaky" Farmer, a Mason County Road Supervisor. Farmer testified that when he got to his property, the Leifeste brothers were already there. Farmer said the brothers were walking around, talking loudly, and were "in the way" of emergency personnel attempting to put out the fire. The Leifeste brothers were querying the emergency personnel as to why they were at a fire threatening Farmer's property when they had not been at the fire a month earlier on the Leifeste property. According

to Farmer, the brothers' behavior led him to believe they were intoxicated. Because they were "hindering [the] effort to stop the fire," Farmer called the Mason County Sheriff's Department, reporting there were two young men on his property, who appeared intoxicated and were causing problems and needed to be removed from the property.

Celeste Kramer, a jailer and dispatcher for the Mason County Sheriff's Department, testified at the motion to suppress hearing. She stated she received a telephone call from Farmer on the day of the fire at approximately 9:20 p.m. According to Kramer, Farmer stated there were two intoxicated men on his property and they refused to leave. Kramer noted this on her call sheet, which was introduced into evidence, as "2 drunks at house won't leave." Kramer also testified to receiving another call around the same time Farmer called, advising her the intoxicated men were in a white pickup truck. In response to Farmer's call and the other call about the pickup truck, Kramer said she dispatched Sheriff Low to Farmer's house. She also said she sent other deputies to Farmer's place as back-up for Sheriff Low.

Mason County Deputy Billy Dean Carson testified at the suppression hearing that at the time Sheriff Low was dispatched to Farmer's, he was sitting in his car at Farmer's property. He was carrying the county judge around to different locations so the county judge could request outside help in fighting the fire–the judge acted as a go-between for state and local agencies in emergency situations. Deputy Carson stated he heard Kramer dispatch Sheriff Low to Farmer's property to deal with two intoxicated subjects. Deputy Carson, who had remained in his official vehicle, stated he saw the Leifeste brothers briefly, but after one of the men spoke to the county judge, the brothers got into a white Chevrolet "4x4" pickup truck and drove away. The deputy testified that he soon saw Sheriff Low pull up and speak to a county employee, Clinton Gamel.

Deputy Carson said that after Sheriff Low spoke to Gamel, the sheriff took off in the direction taken by the white Chevrolet "4x4" pickup truck.

Sheriff Low, the detaining officer, also testified at the motion to suppress hearing. The sheriff was with one of his deputies, assisting traffic control and other matters resulting from the fire, when he received a call from Kramer, the Mason County Sheriff's Department dispatcher. He was advised there were two intoxicated males on Farmer's property "getting in the way of the emergency services that were trying to put the fires out." Sheriff Low acknowledged the dispatch, and when he did, he was given a description of the suspects' vehicle–a single-cab, white, Chevrolet four-wheel-drive pickup. Sheriff Low testified he and his deputy went to Farmer's property and when they pulled into the driveway, he spoke to Clinton Gamel, a Mason County employee assisting with fire fighting operations. According to Sheriff Low, Gamel told him Leifeste and Leifeste's brother had just left the property in a white pickup truck. Sheriff Low testified Gamel said the Leifeste brothers had been at Farmer's, were drunk and mouthing off, and were in the way of emergency workers attempting to put out the fire. When Gamel testified, he admitted having a short interaction with the brothers and seeing them drive away, but could not remember talking to Sheriff Low.

Sheriff Low went on to testify that after he spoke with Gamel, he radioed another deputy, Trent Martin, telling him Leifeste was headed his way and they were in pursuit. Less than three minutes after leaving Farmer's property, Sheriff Low spotted the white pickup truck and turned on his emergency lights. At first, the driver of the vehicle refused to stop. The sheriff stated Deputy Martin had his vehicle stopped ahead of the suspects, and believes the deputy had to step into the road–and may have drawn his weapon–to accomplish the stop. The vehicle did stop, and Sheriff Low testified he got out and approached the driver's side of the vehicle. Sheriff Low

stated Leifeste was the driver. As to Leifeste's condition, the sheriff testified Leifeste smelled strongly of alcohol, had bloodshot eyes, and was wearing "rumpled" clothing. Sheriff Low said he saw beer cans in the car, and testified some were empty and some still contained what appeared to be beer. The sheriff asked Leifeste if he had been drinking, and Leifeste initially replied he had consumed several beers. When the sheriff asked Leifeste to specify the number of beers he had consumed, Leifeste admitted drinking four or five beers. Sheriff Low asked Leifeste to step out of his truck. He testified Leifeste was unsteady on his feet. The sheriff stated he performed the horizontal gaze nystagmus test on Leifeste, and Leifeste exhibited six clues in each eye, which the sheriff said signified Leifeste was "definitely intoxicated." Sheriff Low did not ask Leifeste to perform any portion of the field sobriety test because the stop took place in an area where many emergency vehicles were passing, and the sheriff wanted to remove Leifeste to a safe environment.

The sheriff arrested Leifeste for driving while intoxicated, and observing his brother was intoxicated as well, arrested the brother for public intoxication. Both men were taken to the sheriff's department.

We first hold there is no issue in this case with respect to the reliability of the information supplied by the citizen-informants, Farmer and Gamel. Farmer was known to the sheriff's department dispatcher as the Mason County Road Supervisor, and Gamel was a Mason County employee who spoke directly to the sheriff. Both Farmer and Gamel were known to the law enforcement personnel to whom they gave information, their information was based on their own first-hand perceptions, and they remained answerable for that information after the fact. Farmer and Gamel, therefore, were informants upon whom law enforcement could rely. *See id.* (holding that law enforcement could rely upon citizen-informants because they identified themselves to

911 dispatcher, remained answerable for their report after the fact, and their report was based upon their own first-hand perceptions). Sheriff Low, the detaining officer, was entitled to rely upon the information given directly to him by Gamel, as well as the information relayed to him by the dispatcher, and to consider it in making his investigative stop of Leifeste. *See id.* (holding reviewing court looks to the totality of objective information known collectively to cooperating police officers, including 911 dispatcher). Accordingly, this case boils down to whether the totality of the reliable information in Sheriff Low's possession provided him with specific, articulable facts that when combined with reasonable inferences therefrom, would lead to the reasonable conclusion that Leifeste was committing some type of criminal activity. *See id.*

We recognize that "the facts invoked to justify an investigative detention must support more than a mere hunch or good-faith intuition that criminal activity is afoot." *Id.* However, it is unnecessary for an officer to have the same quantity or quality of information to justify an investigative detention than would be required for a custodial arrest. *See id.* This is because a brief investigative detention is a "significantly lesser intrusion upon the privacy and integrity of the person than a full-blown custodial arrest." *Id.*

Considering the totality of the circumstances, we hold Sheriff Low, based on the information obtained from the dispatcher and Gamel, provided "specific, articulable facts" that combined with rational inferences, and his own observations, could have reasonably concluded Leifeste was driving under the influence. *See id*; *Ford*, 158 S.W.3d at 492. Sheriff Low was advised by two county employees that Leifeste was intoxicated.[2] He was advised that Leifeste was driving a white pickup truck. He observed a white pickup truck matching the informants'

---

[2] We recognize that during the suppression hearing, Gamel testified he could not remember talking to Sheriff Low. However, the trial court is the arbiter of questions of credibility, and it was free to believe Gamel did speak to Sheriff Low, as the sheriff testified, and gave the sheriff the information about Leifeste. *See Derichsweiler*, 2011 WL 222210, at *1 (citing *Amador*, 221 S.W.3d at 673).

description on a public road. Under these circumstances, we hold the Fourth Amendment permitted the sheriff to detain Leifeste to determine whether Leifeste was driving while intoxicated. In other words, we hold the sheriff had reasonable suspicion to detain Leifeste. We therefore overrule Leifeste's first issue.

### Sufficiency

### Standard of Review

Leifeste contends the evidence is legally and factually insufficient to support his conviction for driving while intoxicated. However, there is now but one standard of review for sufficiency complaints in criminal cases. *Brooks v. State*, 323 S.W.3d 893, 894-95 (Tex. Crim. App. 2010); *Rosales v. State*, No. 04-09-00498-CR, 2010 WL 4336171, at *2 (Tex. App.—San Antonio Nov. 3, 2010, pet. ref'd). In *Brooks*, the court of criminal appeals adopted the *Jackson v. Virginia* legal sufficiency standard as the standard of review applicable in all sufficiency challenges. *Brooks*, 323 S.W.3d at 895; *see Jackson v. Virginia*, 443 U.S. 307, 319 (1979). Accordingly, in any case in which the sufficiency of the evidence is challenged, we review "all the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could find the essential elements of the crime beyond a reasonable doubt." *Poindexter v. State*, 153 S.W.3d 402, 405 (Tex. Crim. App. 2005) (citing *Jackson*, 443 U.S. at 318-19; *Geesa v. State*, 820 S.W.2d 154, 159 (Tex. Crim. App. 1991)). We defer to the jury's credibility and weight determinations, and after giving such deference, "will uphold the verdict unless a rational factfinder must have had reasonable doubt as to any essential element." *Laster v. State*, 275 S.W.3d 512, 517 (Tex. Crim. App. 2009).

*The Evidence*

During the trial, the State called several witnesses to testify. Farmer reiterated the testimony given at the suppression hearing, telling the jury the Leifeste brothers were on his property during the fire, were talking loudly and behaving arrogantly, and were harassing those attempting to combat the fire. Farmer said he believed the brothers were intoxicated. According to Farmer, the Leifeste brothers wanted to know why so much effort was being exerted to fight a fire at Farmer's property when that same effort had not been applied to a fire on their property a month earlier. The behavior of the brothers prompted Farmer to call the sheriff's department and ask that someone come and remove them. In addition to telling Kramer, the dispatcher, that he believed the brothers were intoxicated, Farmer also told the county judge, Jerry Bearden, they were intoxicated. Farmer testified the brothers left, but he did not see them leave.

County Judge Jerry Bearden testified that when he got to Farmer's place on the night of the fire, Farmer indicated he was having a problem with the Leifeste brothers. The judge saw one of the brothers taking a picture of the license plate on Farmer's county truck, and observed he was unsteady on his feet. The judge approached and asked what he was doing, and the man explained he was upset about the effort used to fight this fire compared to the effort used to fight a previous fire on his property. The judge testified the man "appeared" to be intoxicated, but he could not say which Leifeste brother it was. The judge asked the brothers to leave, advising them they were interfering with emergency personnel. The judge stated that when he asked them to leave, they left.

The State called county employee Gamel to testify. Gamel stated he saw the Leifeste brothers on Farmer's property the night of the fire and saw them leave in a pickup truck. At trial,

he was unable to provide a description of the truck, and he could not recollect having a conservation with Sheriff Low on the night of the fire.

Kramer, the police dispatcher, testified much the same as she had at the suppression hearing. She recounted Farmer's call wherein Farmer told her there were two intoxicated men on his property who refused to leave. Kramer told the jury about dispatching Sheriff Low to the scene. Kramer did have more to say than she had in the suppression hearing, which was limited to the issue of reasonable suspicion. At trial, Kramer testified that the morning after their arrest, she had contact with the brothers at the jail. She said they were "disheveled" and did not "appear to be feeling too well." Kramer stated she "could smell the odor of an alcoholic beverage" on the men.

The State also called Jana Ritter, who did not testify at the suppression hearing. Ritter, the office manager for the Mason County Sheriff's Department and the county's Deputy Tax Assessor Collector, was at the sheriff's department on the night of the fire. She testified she was there when the sheriff brought in the Leifeste brothers. Ritter stated Leifeste and his brother were "very red in the face," "were having a hard time navigating the steps into the jail," and once inside, "were holding on to the cabinet" to keep themselves upright. She described the brothers' attempt to walk, saying they were "staggering and unsteady on their feet." Ritter said the brothers "were screaming and yelling and being very belligerent" to the sheriff and to the dispatcher who was attempting to book them. Ritter testified the brothers were shouting, cursing, calling people names, and being very rude and obnoxious. Ritter said, as to the Leifeste brothers, she had "no doubt they were drunk."

Sheriff Low was the State's next witness. As he had at the suppression hearing, he recounted the events leading up to Leifeste's arrest. Sheriff Low was directing traffic near

Farmer's property when one of his dispatchers contacted him about two intoxicated males at Farmer's residence. The sheriff testified he was told the two males "were drunk and mouthy and causing problems for emergency workers." In response, the Sheriff got into the car with Deputy Parker and headed toward Farmer's place. When they got to Farmer's property, they were met by Clinton Gamel, a Mason County employee. The sheriff said he spoke with Gamel, who provided certain information to him about the suspects and their vehicle. The sheriff, by way of the probable cause affidavit that was admitted into evidence, testified Gamel told him "the Leifeste boys had been there, and that they were mouthing off, drunk, and getting into everybody's way." Gamel also provided a description of the vehicles in which the Leifestes left: a white, single-cab, Chevrolet pickup, four-wheel drive. In response to Gamel's information, Sheriff Low and Deputy Parker turned around and headed back the way they came. Very quickly they came upon a vehicle matching the description received from Gamel. Deputy Parker turned on his "overhead lights" and initiated a traffic stop. The vehicle stopped "kind of in the middle of the road, after Deputy Martin stepped out" into the road. According to the sheriff, the driver did not stop immediately, but only after another deputy stepped in the road. The sheriff verified that the road upon which they stopped Leifeste was a public road.

The sheriff stated he got out of his car and walked up to the driver's side of the suspect vehicle, which he described as a "white, single-cab, Chevrolet pickup, four-wheel drive." Sheriff Low testified Leifeste was behind the wheel. The sheriff said Leifeste "had red, bloodshot eyes" and emanated "a strong odor of alcohol on and about his person." Sheriff Low stated he asked Leifeste to get out of the vehicle, which he did. The sheriff said Leifeste was "unsteady on his feet" and when asked by the sheriff if he had been drinking, responded "yes." When asked how much he had had to drink, Leifeste initially told Sheriff Low "several." When the sheriff asked

Leifeste what he meant by "several," Leifeste said "four or five." The sheriff testified there were several empty beer cans in the vehicle, as well as two open cans that appeared to be half full. Sheriff Low said he could tell the beers were still cold from the condensation on the cans.

After answering questions regarding his qualifications to administer a horizontal gaze nystagmus ("HGN") test and describing the test, Sheriff Low testified he performed the HGN test on Leifeste. The sheriff stated that if a subject exhibits three out of six clues in each eye, i.e., six clues in all, it is "[c]onclusive evidence" the subject is "under the influence" of alcohol. Leifeste exhibited six clues. The sheriff said he did not require Leifeste to perform any of the other field sobriety tests, e.g., walk and turn, one-legged stand, finger touch, etc. Sheriff Low said based on the bloodshot eyes, strong smell of alcohol, the HGN test results, the presence of beer cans–some still containing alcohol, and Leifeste's admission that he had four or five beers, there was sufficient evidence to arrest Leifeste for driving while intoxicated. But there was more than this–others had reported Leifeste was intoxicated, Leifeste was arguing with and impeding emergency workers while they were attempting to fight a fire, he initially failed to stop when the sheriff attempted to pull him over, he was acting somewhat irrationally and being uncooperative, was unsteady on his feet, and he "spoke with a thick tongue and was slurring his words." The sheriff testified he offered Leifeste a breath test, but he refused. The sheriff summed up his testimony by stating Leifeste did not have normal use of his mental or physical faculties. According to the sheriff, Leifeste was intoxicated and operating a motor vehicle on a public roadway.

During cross-examination, Leifeste challenged the memory and credibility of the witnesses, and there were some conflicts. For example, Sheriff Low testified he spoke to Gamel and received information from him regarding the Leifeste brothers. Gamel, however, could not

remember speaking to the sheriff the night of the fire. Leifeste pointed out that none of the law enforcement officials who testified still work for Mason County, and one of them had in fact been arrested for drug possession. Sheriff Low testified Leifeste initially refused to pull over until a deputy stepped into the road and raised his firearm, but the sheriff admitted this was not in his official report. Moreover, the deputy admitted he never pulled his firearm to force Leifeste to stop.

Leifeste also challenged the sheriff's expertise regarding administration of the HGN test, suggesting the test results were flawed because of all of the emergency lights in the test area. Leifeste also pointed out that in the report the sheriff noted Leifeste exhibited four, not six, clues on the HGN test. Leifeste also suggested that perhaps his eyes were bloodshot because of the smoke from the fire or allergies, not because he had been drinking.

Finally, the defense presented Chadwick Scott Leifeste as a witness. Chadwick is the brother of Wesley Houston Leifeste, the appellant in this case who was convicted of driving while intoxicated. Chadwick presented testimony that neither he nor his brother were intoxicated, having only drank three or four beers from between 3:30 p.m. to 9:30 p.m. on the day of the fire and the arrest. He admitted they were at Farmer's property and were upset about the equipment that was being used to fight the fire because that equipment had not been used at a fire on their property. Chadwick said they left on their own after about ten minutes; he denied they were asked to leave. Chadwick admitted he was angry about the arrest, but denied using curse words at the jail.

*Application*

A person commits the offense of driving while intoxicated if the person is intoxicated while operating a motor vehicle in a public place. TEX. PENAL CODE ANN. § 49.04(a) (West

2003). For the purposes of this case, a person is intoxicated if he does "not have the normal use of mental or physical faculties by reason of the introduction of alcohol . . . into the body." *Id*. § 49.01(2)(A). When we consider the elements of the offense and the evidence, and view the evidence in the light most favorable to the verdict, we hold there was sufficient evidence to support the jury's finding that Leifeste was driving while intoxicated. *See Poindexter v. State*, 153 S.W.3d 402, 405 (Tex. Crim. App. 2005) (citing *Jackson*, 443 U.S. at 318-19; *Geesa v. State*, 820 S.W.2d 154, 159 (Tex. Crim. App. 1991). It was uncontested Leifeste was driving a motor vehicle on a public roadway. As to the intoxication element, there was evidence that Leifeste exhibited slurred speech, had bloodshot eyes, had a strong odor of alcohol on his person, was unsteady on his feet, and admitted to consuming four or five beers. *See Cotton v. State*, 686 S.W.2d 140, 142 n.3 (Tex. Crim. App. 1985) (holding evidence of intoxication may include slurred speech, bloodshot eyes, unsteady balance, staggered gait, and odor of alcohol). Additionally, Leifeste refused to submit to a breath test, which is relevant evidence in support of intoxication. *See Bartlett v. State*, 270 S.W.3d 147, 153 n.20 (Tex. Crim. App. 2008). Admittedly there were conflicts and potential credibility issues in this case; however, conflicts in the evidence and questions turning upon a witness's credibility are left to the jury to resolve. *See Saxton v. State*, 804 S.W.2d 910, 914 (Tex. Crim. App. 1991) (holding jury resolves conflicts in evidence); *Lancon v. State*, 253 S.W.3d 699, 705 (Tex. Crim. App. 2008) (holding jury resolves credibility issues). Therefore, deferring to the jury's credibility determination and conflict resolution, we hold the evidence is sufficient to support Leifeste's conviction, and we overrule his second issue.

**CONCLUSION**

Based on the foregoing, and having overruled Leifeste's issues, we affirm the trial court's judgment.

Marialyn Barnard, Justice

Do Not Publish