Court of Appeals
Fourth Court of Appeals District of Texas
San Antonio




# MEMORANDUM OPINION

No. 04-10-00621-CV

In the **MATTER OF A.S.**

From the 386th Judicial District Court, Bexar County, Texas
Trial Court No. 2010-JUV-00852
Honorable Laura Parker, Judge Presiding

Opinion by:    Marialyn Barnard, Justice

Sitting:    Catherine Stone, Chief Justice
Karen Angelini, Justice
Marialyn Barnard, Justice

Delivered and Filed:  April 6, 2011

AFFIRMED

After the trial court denied his motion to suppress, a jury found appellant A.S., a juvenile, had engaged in delinquent conduct by possessing a controlled substance, Alprazolam.[1]  The trial court sentenced A.S. to nine months probation and ordered him to perform twenty-four hours of community service.  On appeal, A.S. contends the trial court erred in denying his motion to suppress.  We affirm the trial court's judgment.

## BACKGROUND

On the evening A.S. was arrested, San Antonio police officers Don Becker and Evan Bagley were downtown on bike patrol.  According to the officers, they heard a vehicle "basing."

---

[1] Alprazolam is more commonly known by its brand name, Xanax.

Officer Becker explained "basing" occurs when loud music is emitted from a motor vehicle that can be heard from a distance, causing vibrations. The officers testified they heard the music and felt the vibrations from their position approximately thirty feet away. The officers, believing the "basing" emitting from the vehicle was in violation of several city noise ordinances, decided to stop the vehicle. According to Officer Becker, the music was so loud he had to tap on the vehicle's window to get the driver's attention. As the officers were standing outside the vehicle, they noticed A.S. sitting in the passenger seat. Both officers testified A.S. was not wearing a seatbelt. The officers asked all the occupants of the vehicle to get out. The officers stated A.S. was arrested for not wearing a seatbelt. A.S. was searched incident to the arrest. During the search, Officer Bagley found five pills, later identified as Alprazolam, in A.S.'s front shirt pocket.

Subsequently, the State filed a petition alleging A.S. had engaged in delinquent conduct by possessing a controlled substance, Alprazolam, in an amount less than twenty-eight grams. A.S. filed a pretrial motion to suppress. After a hearing, the trial court denied the motion. Thereafter, A.S. pleaded not true to the petition, and the case was tried to a jury. The jury found "true" to the allegation that A.S. had engaged in delinquent conduct by possessing a controlled substance. The trial court placed A.S. on probation for nine months in the custody of his mother, and ordered him to perform twenty-four hours of community service restitution. A.S. timely filed a notice of appeal.

### ANALYSIS

In his sole appellate issue, A.S. contends the trial court erred in denying his motion to suppress. A.S. makes the following argument in support of his issue: if the officers lacked reasonable suspicion to stop the vehicle in which he was riding, they would not have seen the

alleged seatbelt violation, negating any probable cause to arrest, which would then negate the officers' authority to conduct a search incident to arrest, mandating suppression of the Alprazolam. In other words, if this court finds there was no reasonable suspicion to stop the vehicle in which A.S. was riding, we must hold the trial court erred in denying his motion to suppress and reverse and remand for a new trial. A.S.'s argument is limited to the absence of reasonable suspicion for the initial stop of the vehicle in which he was riding; he does not challenge probable cause based on the seatbelt violation.

*Standard of Review*

When reviewing a motion to suppress in a juvenile case, we use the same standards applicable to suppression motions in adult criminal cases. *In re R.J.H.*, 79 S.W.3d 1, 6 (Tex. 2002); *In re D.J.C.*, 312 S.W.3d 704, 711 (Tex. App.—Houston [1st Dist.] 2009, no pet.). In adult criminal cases, we review a trial court's ruling on a motion to suppress for abuse of discretion. *State v. Dixon*, 206 S.W.3d 587, 590 (Tex. Crim. App. 2006). Our review is bifurcated. *Amador v. State*, 221 S.W.3d 666, 673 (Tex. Crim. App. 2007); *Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997). When, as here, the record is silent on the reasons for the trial court's denial, i.e., there are no explicit fact findings, and neither party timely requested findings and conclusions from the trial court, we imply the necessary fact findings that would support the trial court's ruling if the evidence supports those findings. *State v. Garcia-Cantu*, 253 S.W.3d 236, 241 (Tex. Crim. App. 2008). Typically, support for the implied findings must come from the evidence produced during the motion to suppress hearing. *Gutierrez v. State*, 221 S.W.3d 680, 687 (Tex. Crim. App. 2007). However, when the suppression issue is relitigated at trial, as it was here, the appellate court must consider the evidence from both the suppression hearing and the trial. *Id.*

We must view the evidence in the light most favorable to the trial court's ruling, and we will reverse only if the ruling is outside the zone of reasonable disagreement. *Garcia-Cantu*, 253 S.W.3d at 241. In conducting our review, we give almost total deference to the trial court's resolution of questions of historical fact and mixed questions of law and fact that turn on the weight or credibility of the evidence. *Derichsweiler v. State*, No. PD-0176-10, 2011 WL 222210, at \*1 (Tex. Crim. App. Jan. 26, 2011) (citing *Amador*, 221 S.W.3d at 673). We review de novo the trial court's application of the law to the facts. *See id.*; *Weide v. State*, 214 S.W.3d 17, 25 (Tex. Crim. App. 2007). We will sustain the trial court's ruling "if it is reasonably supported by the record and is correct on any theory of law applicable to the case." *Dixon*, 206 S.W.3d at 590.

*Applicable Law: Reasonable Suspicion*

The Fourth Amendment requires that a warrantless detention of a person that amounts to less than a custodial arrest must be justified by reasonable suspicion. *Derichsweiler*, 2011 WL 222210, at \*1; *Ford v. State*, 158 S.W.3d 488, 492 (Tex. Crim. App. 2005). An officer has reasonable suspicion to detain if he has "specific, articulable facts that, when combined with rational inferences from those facts, would lead him to reasonably conclude that a particular person actually is, has been, or soon will be engaged in criminal activity." *Id.* This is an objective standard that disregards the actual subjective intent of the arresting officer and considers, instead, whether there was an objectively justifiable basis for the detention. *Derichsweiler*, 2011 WL 222210, at \*1. Under this standard, the articulable facts on which the officer relied need only support a reasonable belief that activity out of the ordinary is occurring or has occurred, that the person detained is connected to the activity, and that the activity is

related to crime. *State v. Garcia*, 25 S.W.3d 908, 912 (Tex. App.—Houston [14th Dist.] 2000, no pet.).

*Application*

Officers Becker and Bagley testified the vehicle in which A.S. was riding was stopped because of violations of several provisions of the City of San Antonio Code of Ordinances, specifically section 21-52, 21-53, and 21-54. *See* SAN ANTONIO, TEX., art. III §§ 21-52, 21-53, & 21-54. Section 21-52 precludes "noise nuisances," which include, in part, "[t]he playing or permitting or causing the playing of any radio, television, phonograph, drum, juke box, nickelodeon, musical instrument, sound amplifier or similar device which produces, reproduces, or amplifies sound" in such a manner or with such volume so as "to annoy, to distress, or to disturb the quiet, comfort, or repose of a person of reasonable nervous sensibilities." *Id*. § 21-52(a)(1). Section 21-53 states that it is unlawful to "create, maintain or cause any ground or airborne vibration which is perceptible without instruments at any point on any affected property adjoining the property in which the vibration source is located." *Id.* § 21-53. And most pertinent in this case, section 21-54, which is entitled "Vehicular Mounted Sound Amplification Systems," states it is unlawful:

> . . . for any person operating or controlling a motor vehicle in either a public or private place within the city to operate any sound amplifier which is part of, or connected to any radio, stereo receiver, compact disc player, cassette player, or other similar device in the motor vehicle, in such a manner that, when operated, is audible at a distance of thirty (30) or more feet from the source or, when operated causes a person to be aware of the vibration accompanying the sound in any location outside the confines of the vehicle emitting the sound, noise, or vibration.

*Id.* § 21-54. Section 21-58 provides that a violation of any of these ordinances is a Class C misdemeanor, and punishable by a fine of $100 to $2,000, depending upon the violator's intent. *Id.* § 21-58(a), (b).

The officers, who stated they were "well over" thirty feet away, testified loud music was emanating from the vehicle in which A.S. was riding. Admittedly, the officers did not use any instrumentation to measure the decibel level of the music, but that is not required by section 21-54. Rather, a violation occurs when a stereo or other music device in a motor vehicle is operated in a manner that makes it audible from thirty or more feet away. We hold the officers' testimony, which the trial court was entitled to believe, provided "specific, articulable facts" that led them "to reasonably conclude" the vehicle in which A.S. was riding was in violation of section 21-54, a criminal violation. *See Derichsweiler*, 2011 WL 222210, at *1; *Ford*, 158 S.W.3d at 492. Therefore, the initial stop of the vehicle and its occupants was supported by reasonable suspicion, and therefore valid under the Fourth Amendment. *See id.* Because the initial stop was justified, and A.S. does not contest the officers' observation of the seatbelt violation and probable cause to arrest based thereon, we hold the search that produced the controlled substance was not in violation of the Fourth Amendment and the trial court did not err in denying the motion to suppress.

Additionally, the officers testified they could feel the vibrations the car was producing as a result of the loud music being played. We hold this is sufficient to establish, for purposes of reasonable suspicion, violations of section 21-54, which makes it unlawful for a vehicle to produce a vibration that can be felt by someone outside the vehicle, and section 21-53, which makes it unlawful for any person to create or cause any vibration which is perceptible without instruments on property adjoining the source of the vibration. *See* SAN ANTONIO, TEX., art. III §§ 21-53, 21-54.

A.S. seems to contend the officers were required to prove an actual violation of the ordinance to establish reasonable suspicion, and that the officers' testimony based on their

personal observations that ordinances were being violated was insufficient.  We disagree.  An officer's expressed belief that a person was violating a statute or ordinance is sufficient to justify an investigatory stop.  *See Howard v. State*, 932 S.W.2d 216, 218-19 (Tex. App.—Texarkana 1996, pet. ref'd).  Even a subsequent finding that there was no violation will not vitiate reasonable suspicion for the investigatory detention.  *Id*.

## CONCLUSION

Based on the foregoing, we hold the officers had reasonable suspicion to detain the vehicle in which A.S. was a passenger.  The valid detention allowed the officers to observe the seatbelt violation, which gave them probable cause to arrest, and the right to search incident to that arrest.  Accordingly, the trial court did not err in denying A.S.'s motion to suppress the Alprazolam.  We therefore overrule A.S.'s issue and affirm the trial court's judgment.

Marialyn Barnard, Justice