Affirmed and Memorandum Opinion filed August 16, 2011.

 

In The

 

Fourteenth Court of
Appeals

___________________

 

NO. 14-10-00663-CR

___________________

 

Joseph B. Davis, Appellant

 

V.

 

The State of Texas, Appellee



 



 

On
Appeal from the County Criminal Court at Law No. 15

Harris County,
Texas



Trial Court Cause No. 1657631

 



 

MEMORANDUM
OPINION

Appellant Joseph B. Davis was charged with second-offender
driving while intoxicated (DWI).  Davis pleaded “guilty” after the trial court
denied his pre-trial motion to suppress, and the trial court sentenced him to
two years’ probation.  In his lone issue on appeal, Davis exercises his right
to appeal the trial court’s ruling on his motion to suppress.  We affirm.  

I

Randy Twedt was driving on Loop 610 in Houston around
9:45 p.m. on January 29, 2011.  As Twedt prepared to take an exit ramp to
Highway 288, a black SUV swerved into his lane, forcing him onto the shoulder lane.
 The SUV continued to swerve into Twedt’s driving lane, and at one point nearly
collided with a guardrail.  Twedt called 911 from his cell phone and followed
the SUV as it exited onto Highway 288.  Twedt relayed a description of the SUV and
its license plate number to the dispatcher and also gave his name and phone
number.  

While on the phone with the dispatcher, Twedt pulled
over on Highway 288 and observed the SUV exit the highway and stop at a
convenience store on the service road at Yellowstone Street.  While the SUV was
stopped at the convenience store, Twedt provided the dispatcher with the
location of the SUV but noted that he never saw the driver.  Twedt also
testified that while he was pulled over, he spoke to an unidentified police officer
on the phone.  Twedt testified that he resumed driving a few minutes after the
dispatcher informed him that an officer was on the way to the convenience
store.  The dispatcher later called Twedt back and requested he return to the
scene.  Twedt told the dispatcher he was on the other side of town and was
available if required, but the dispatcher eventually told him he was no longer
needed and Twedt never returned.

The Houston Police Department dispatched Officer
Veronica Salmeron to investigate Twedt’s complaint.  Dispatch informed Officer
Salmeron that a citizen had reported a black SUV with license plate number
005-RTV driving aggressively and swerving in and out of driving lanes, and that
the SUV reportedly was parked at the convenience store on the service road of
Highway 288 at Yellowstone Street.  When she arrived at the location, Officer
Salmeron spotted a vehicle matching the description given by Twedt pulling out
of the convenience store.  Officer Salmeron stopped the vehicle before it could
leave the parking lot.  Officer Salmeron testified Davis was alone in the SUV
and that he smelled of alcohol, slurred his speech, and had glassy, red eyes. 
Suspecting that Davis was under the influence of alcohol, Officer Salmeron
detained Davis in her patrol car and called a DWI task force to administer
field sobriety testing, after which Davis was arrested for DWI.  

Davis filed a motion to suppress with the trial court,
arguing Officer Salmeron lacked reasonable suspicion to stop him, and therefore
all tangible evidence and statements obtained from his detention should be
suppressed.  The trial court denied Davis’s motion to suppress, finding that
Twedt’s information was both credible and specific, and therefore supported a
reasonable suspicion to stop and detain Davis.  Davis pleaded “guilty” after
the trial court denied his motion to suppress but exercised his right to appeal
the trial court’s ruling on his motion to suppress. 

II

 

A

 

            In
reviewing a trial court’s ruling on a motion to suppress evidence, we afford
almost total deference to the trial court’s determination of the historical
facts, while reviewing de novo mixed questions of law and fact not turning on
an evaluation of credibility and demeanor.  State v. Garcia, 25 S.W.3d
908, 911 (Tex. App.—Houston [14th Dist.] 2000, no pet.).  In this case, whether
Officer Salmeron was justified in stopping Davis does not turn on demeanor and
credibility; rather, the issue turns on the legal significance of the facts
recounted by the witnesses.  See Derichsweiler v. State, ___ S.W.3d ___, No. PD-0176-10,
2011 WL 255299, at *4 (Tex. Crim. App. Jan. 26, 2011).  Therefore,
we review the trial court’s ruling de novo and determine whether there was
sufficient reasonable suspicion to detain Davis.  

B

Police officers may stop
and briefly detain persons suspected of criminal activity on less information
than is required for probable cause.  See Terry v. Ohio, 392 U.S. 1, 21–22
(1968); Garza v. State, 771 S.W.2d 549,
558 (Tex. Crim. App. 1989) (“It is
clear that circumstances short of probable cause may justify temporary
detention for purposes of investigation.”).  The reasonableness of a temporary
detention must be examined in terms of the totality of the circumstances and
will be justified when the detaining officer has specific articulable facts,
which taken together with rational inferences from those facts, lead her to
conclude that the person detained actually is, has been, or soon will be
engaged in criminal activity.  Woods v. State, 956 S.W.2d 33, 38
(Tex. Crim. App. 1997).  These specific, articulable facts must amount to more
than a mere hunch or suspicion.  Davis v. State, 947 S.W.2d 240,
244 (Tex. Crim. App. 1997) (quoting Garza, 771 S.W.2d at
558).  The detaining officer must
point to something that would lead a reasonable person to believe the person
being detained was engaged in a criminal act.  Klare v. State,
76 S.W.3d 68, 72 (Tex. App.—Houston [14th Dist.] 2002, pet. ref’d).  The
existence of reasonable suspicion is an objective standard; the subjective
intent of the officer conducting the stop is irrelevant.  Garcia v. State,
43 S.W.3d 527 (Tex. Crim. App. 2001). 

An anonymous tip alone will rarely establish the
level of reasonable suspicion required to justify a detention.  Florida v.
J.L., 529 U.S. 266, 270 (2000); Alabama v. White, 496 U.S. 325, 329
(1990).  However, a tip from an informant exhibits sufficient indicia of
reliability to justify a detention when the informant has placed himself in a
position to be easily identified and held responsible for the information
provided.  See Hawes v. State, 125 S.W.3d 535, 539–40 (Tex.
App.—Houston [1st Dist.] 2002, no pet.).  Several courts have upheld
investigative stops based solely on unsolicited reports from private citizens.  See
State v. Fudge, 42 S.W.3d 226, 232 (Tex. App.—Austin 2001, no
pet.) (upholding detention based solely on cab driver’s unsolicited personal
report to officer about erratic driving); State v. Garcia, 25 S.W.3d
908, 913 (Tex. App.—Houston [14th Dist.] 2000, no pet.) (holding reasonable
suspicion existed when individual “flagged down” officer in parking lot and
personally reported incident, even though informant later left scene without
identifying himself); State v. Stolte, 991 S.W.2d 336, 342–43 (Tex.
App.—Fort Worth 1999, no pet.) (holding that traffic stop was justified based
on tip from informant who witnessed erratic driving, called police on cell
phone, followed vehicle, and waited at scene while stop was made); State v.
Sailo, 910 S.W.2d 184, 189 (Tex. App.—Fort Worth 1995, pet. ref’d)
(upholding stop based on a report personally given to officer even though
informant drove away before being identified).

III

In his sole issue on appeal, Davis argues the trial
court erred in denying his motion to suppress because Officer Salmeron lacked
reasonable suspicion to stop Davis.  Specifically, Davis asserts that Officer
Salmeron did not observe Davis driving recklessly and therefore could not corroborate
Twedt’s statements to the 911 dispatcher.  Davis further contends there is no
evidence he was driving the SUV when Twedt called 911.  Lastly, Davis contends Officer
Salmeron acted on unreliable information because she had no detailed
description of wrongdoing or knowledge of whether the citizen caller had put
himself in a position to be held accountable for his intervention.  

It is undisputed that Officer Salmeron did not personally
observe Davis’s reportedly reckless driving.  But reasonable suspicion need not
arise from the officer’s personal observation; it may be supplied by information
from another person.  Brother v. State, 166 S.W.3d 255, 257 (Tex. Crim.
App. 2005).  Accordingly, it was not necessary for Officer Salmeron to
personally observe Davis driving recklessly.  See, e.g., Hime v. State, 998 S.W.2d 893, 895–96 (Tex.
App.—Houston [14th Dist.] 1999, pet. ref’d).  An officer’s
subsequent corroboration of information received from an informant may increase
the reliability of the information.  Stolte, 991 S.W.2d at 341.  However,
“corroboration” in this sense does not mean the officer must personally observe
the conduct that causes him to reasonably suspect a crime is being, has been,
or is about to be committed.  Id.  Rather, corroboration refers to whether
the police officer, in light of the circumstances, confirms enough facts to
reasonably conclude the information given to him is reliable and a temporary
detention is thus justified.  Id.  

Where the reliability of the information is
increased, less corroboration is necessary. See White, 496 U.S. at
330.  A detailed description of the wrongdoing, along with a statement that the
event was observed firsthand, entitles an informant’s tip to greater weight.  Illinois
v. Gates, 462 U.S. 213, 234 (1983).  A tip also deserves greater weight if
the person put himself in a position to be held accountable for his
intervention.  See Garcia, 25 S.W.3d at 913.  Also, a person who is not connected
with the police or who is not a paid informant is considered inherently
trustworthy when he advises the police he suspects criminal activity has
occurred or is occurring.  Id. 

Here, Twedt provided the dispatcher with the location
of Davis’s SUV from Loop 610 until Davis parked at the convenience store.  Twedt
gave specific accounts of Davis’s reckless driving, as well as a detailed
description of the SUV and its license plate number.  Twedt further provided
the dispatcher with his name and phone number and testified he told the
dispatcher he could report to the scene if necessary.  Considering these facts
together, Twedt’s tip had a high indicia of reliability because he called the
police to give information about a crime under circumstances that would render
him accountable for his intervention.  See, e.g., Hime, 998
S.W.2d at 895–96 (finding informant reliable because she provided police with
her name and gave detailed description of vehicle and wrongdoing); Brother,
166 S.W.3d at 257 (holding that reasonable suspicion need not arise from the
officer’s personal observation, but may be supplied by information acquired
from another person); Stolte, 991 S.W.2d at 341 (holding that
corroboration by an officer of any information relayed by the informant may
increase the reliability of the information).

Although Officer Salmeron
did not witness Davis’s reckless driving, she was able to corroborate other
facts from Twedt’s tip, including a description of the SUV, its license plate
number, and its location at the convenience store.  See id.  Given the
high indicia of reliability presented by Twedt’s tip, we conclude Officer
Salmeron corroborated enough of the information provided by Twedt to give rise
to the reasonable suspicion necessary to stop Davis.  See Brother,
166 S.W.3d at 259–60; Garcia, 25 S.W.3d at 913.  And although Davis argues Officer
Salmeron did not have a detailed description of Davis’s wrongdoing or
knowledge of whether Twedt put himself in a position to be identified, Officer
Salmeron testified she knew that Twedt had
followed Davis to his present location and remained in contact with the 911
dispatcher until she arrived at the convenience store.  Moreover, to the extent
Officer Salmeron was unaware of the extent to which Twedt put himself in a
position to be held accountable to the information he provided authorities, the
dispatcher’s knowledge may be imputed to Officer Salmeron.  See Hoag v. State,
728 S.W.2d 375, 380 (Tex. Crim. App. 1987) (holding that the cumulative
information known to the cooperating officers at the time of the stop is to be
considered in determining whether reasonable suspicion exists).  Furthermore,
Davis’s contention that there is no evidence he was the driver of the vehicle
while Twedt observed the reckless driving is of no effect.  Regardless of
whether Davis was the same driver Twedt observed, Officer Salmeron nonetheless
had the reasonable suspicion necessary initially to stop Davis’s vehicle, after
which it became clear to Officer Salmeron that Davis displayed signs of
intoxication regardless of whether he was the driver Twedt observed.    

We conclude the information reported by Twedt had a
high indicia of reliability and that Officer Salmeron’s corroboration of
Twedt’s information generated the necessary reasonable suspicion to justify
stopping Davis.  See Woods, 956 S.W.2d at 38.  We overrule
Davis’s sole point of error.

***

For the foregoing
reasons, we affirm the trial court’s decision. 

 

                                                                                    

                                                                        /s/        Jeffrey
V. Brown

                                                                                    Justice

 

Panel consists of Justices
Anderson, Brown, and Christopher.

Do Not Publish — Tex. R. App. P. 47.2(b).