# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-15-00079-CR

**David Kent Thacker, Jr., Appellant**

**v.**

**The State of Texas, Appellee**

### FROM THE DISTRICT COURT OF COMAL COUNTY, 207TH JUDICIAL DISTRICT
### NO. CR2013-096, HONORABLE R. BRUCE BOYER, JUDGE PRESIDING

### M E M O R A N D U M   O P I N I O N

After being discovered asleep in the driver's seat of his car, David Kent Thacker, Jr., was arrested and later indicted for the offense of driving while intoxicated. *See* Tex. Penal Code § 49.04 (setting out elements of offense of driving while intoxicated). In addition to containing allegations regarding the offense at issue, the indictment also asserted that Thacker had previously been convicted of driving while intoxicated on three different occasions.[1] *See id.* § 49.09(b)(2) (elevating offense of driving while intoxicated to third-degree felony if defendant has previously been convicted two times of driving while intoxicated). Moreover, the indictment contained two enhancement allegations asserting that Thacker had previously been convicted of two felony offenses for driving while intoxicated.

---

[1] During the trial, Thacker stipulated that he had previously been convicted of two offenses for driving while intoxicated.

At the end of the guilt or innocence phase of the trial, the jury found Thacker guilty of the charged offense. During the punishment phase, Thacker pleaded true to the enhancement allegations, and the jury determined that Thacker should be imprisoned for life. *See id.* § 12.42(d) (listing permissible punishment range for felony offense if it is shown that "defendant has previously been finally convicted of two felony offenses, and the second previous felony conviction is for an offense that occurred subsequent to the first previous conviction having become final"). The district court entered its judgment in accordance with the jury's determinations. We will affirm the district court's judgment of conviction and sentence.

## BACKGROUND

After his arrest for driving while intoxicated, Thacker moved to suppress evidence obtained by law-enforcement officers during their investigation and to suppress statements that he made during the investigation, and the district court overruled the motion to suppress.[2] Subsequent to that ruling, a trial was held. During the trial, the officer who found Thacker, Officer Jason Tucker,

---

[2] The district court did grant Thacker's motion to suppress evidence pertaining to the results of his blood draw in light of the court of criminal appeals ruling in *State v. Villarreal*, in which the court determined "that the warrantless, nonconsensual testing of a DWI suspect's blood does not categorically fall within any recognized exception to the Fourth Amendment's warrant requirement, nor can it be justified under a general Fourth Amendment balancing test." No. PD-0306-14, 2014 Tex. Crim. App. LEXIS 1898, at *2 (Tex. Crim. App. Nov. 26, 2014). In its brief, the State notes that the court has since granted the State's motion for rehearing in *Villarreal* and that the case is still under advisement. *See State v. Villarreal*, No. PD-0306-14, 2015 Tex. Crim. App. LEXIS 201, at *1 (Tex. Crim. App. Feb. 25, 2015). Accordingly, the State asserts in a cross point on appeal that the district court's ruling based on *Villarreal* was improper and asserts that the "blood-draw evidence . . . would be one more factor contributing to the overwhelming evidence of [Thacker]'s guilt." However, because we conclude that the evidence presented at trial is sufficient to support Thacker's conviction, we need not address the district court's ruling regarding the results of the blood draw. *See* Tex. R. App. P. 47.1 (mandating that appellate opinions be "as brief as practicable" but address issues "*necessary* to final disposition of the appeal") (emphasis added).

2

and the officer who performed field-sobriety tests on Thacker and ultimately arrested him, Officer Terry Flugrath, each testified regarding their interactions with Thacker on the evening in question. During both of their testimonies, the officers described the extensive training that they had received regarding administering field-sobriety tests. In addition to the officers' testimony, video recordings taken from both of their cars were admitted into evidence and played for the jury.

Regarding the night in question, Officer Tucker related that he responded to a dispatch notification that he received at around 11:15 p.m. stating that there was a "stalled vehicle parked along the railroad tracks," and both Officer Tucker and Officer Flugrath clarified that the tracks at issue were active. In fact, Officer Flugrath stated that trains travel on that line at different times throughout the day.

When describing what he saw when arrived on the scene, Officer Tucker testified that he observed a car "parked alongside the railroad track like you would parallel park along a road, right near the railroad tracks." More specifically, Officer Tucker stated that the car was 20 to 25 feet from the road and that the car was parked so close to the railroad tracks that he had to step over the rail to walk around the car and that if a train came down the tracks, "it would have struck the vehicle, causing a major collision." In addition, Officer Tucker related that he saw Thacker inside the vehicle in the driver's seat "slumped over, sound asleep"; that the car was running; that he had to "shake, bang on the window, yell, and scream" for one to two minutes to rouse Thacker; and that Thacker turned off the car when he woke up.

When describing Thacker's demeanor after waking up, Officer Tucker stated that Thacker was "[v]ery slow to respond to anything I asked, kind of unable to concentrate at what I was

3

telling him to do," that he "had a hard time putting on a flip-flop just to get out of the car," and that he needed assistance walking away from the train tracks. Moreover, Officer Tucker explained that when the door to Thacker's car was opened, he could smell a "strong . . ., stale, [and] stagnant" odor of "metabolized . . . alcohol" as "if someone had been drinking." Later, Officer Tucker explained that he helped Thacker move away from the train tracks and led him over to his police car and that he drove Thacker's car to a safe distance away from the train tracks.

In his testimony, Officer Tucker recalled that after he moved Thacker's car, he talked with Thacker and asked him where he had been earlier that night and that Thacker related that he went to see a friend in Boerne. Further, Officer Tucker related that Thacker stated that he thought he was still in Boerne even though he was found in his car near New Braunfels. In addition, Officer Tucker described Thacker as being not very alert, being "sluggish with his reactions," and being unable to concentrate on simple questions, but Officer Tucker agreed that Thacker was able to provide his driver's license number, his zip code, his birthday, and his social security number. Officer Tucker also recalled that Thacker was very delayed in his responses, was slurring his speech, and had "blood shot eyes." In fact, Officer Tucker testified that he believed that Thacker had lost the normal use of his mental faculties and was intoxicated. Moreover, Officer Tucker explained that after Thacker was arrested, he performed an inventory of Thacker's vehicle and found a bottle of rum on the floorboard of the front passenger seat. When describing the bottle, Officer Tucker stated that the bottle was "about three-quarters full."

During his testimony, a video recording of Officer Tucker's interaction with Thacker was played for the jury. The video is generally consistent with Officer Tucker's testimony. On the

4

video, Thacker's car is seen alongside a railroad track a few feet off of a main road but perpendicular to that roadway. In addition, on the video, Thacker states that he had "too much to drink" that night and that he "messed up."

After Officer Tucker finished testifying, Officer Flugrath was called to the stand to describe his observations of Thacker and explained that he arrested Thacker after asking Thacker to perform field-sobriety tests and after Thacker refused to provide a blood sample. Specifically, Officer Flugrath recalled that Thacker's car was parked along the train tracks, commented that it is not normal for someone to park a car there, and remarked that Thacker looked disoriented, had "glassy and bloodshot eyes," and smelled like alcohol. In addition, Officer Flugrath related that Thacker stated that he did not know where he was, confirmed that he had been driving his car, and explained that he was the only one in the car that evening.

Regarding the field-sobriety tests, Officer Flugrath testified that he performed the horizontal-gaze-nystagmus test on Thacker; that the testing revealed six of six possible clues of intoxication; that the nystagmus test is the most accurate of the standardized tests; that when he asked Thacker to perform the walk-and-turn test, Thacker refused; that when he asked Thacker to perform the one-leg test, Thacker shook his head, said, "I can't do that," and provided several excuses as to why he could not perform the test; that he asked Thacker to recite the alphabet; and that Thacker repeated a string of the letters when completing the task. Moreover, Officer Flugrath related that when he initially asked Thacker to perform field-sobriety tests, Thacker responded, "I made a mistake. I understand that. I didn't know I made that big a mistake. I apologize." When describing his interactions with Thacker, Officer Flugrath testified that, based on his training, he believed that Thacker was intoxicated and had lost the normal use of his physical and mental faculties.

5

During his testimony, a video recording of Officer Flugrath's interaction with Thacker was played for the jury. The video is generally consistent with Officer Flugrath's testimony. In addition, on the video, Thacker stated, "I know I'm in trouble," related that he did not remember how or why he parked his car alongside the train track, and apologized for parking there, but he also said that he did remember driving over the railroad crossing on the road. Moreover, Thacker stated that he had left his friend's house at approximately 10:30 p.m., and when Officer Flugrath asked him how much he had to drink at his friend's house, he answered, "enough." In addition, Thacker stated that he "made a mistake" when he decided to leave his friend's house.

After considering the evidence presented at trial, the jury determined that Thacker was guilty of the alleged offense, and the district court imposed a life sentence in accordance with the jury's determination.

## DISCUSSION

In six issues on appeal, Thacker asserts that the district court erred by failing to grant his motion to suppress the evidence obtained from his detention and to suppress statements that he made to the officers, that the evidence is legally insufficient to support his conviction, and that the imposition of a life sentence for the offense at issue constitutes cruel and unusual punishment. We will address his sufficiency challenges first, resolve the remainder of his issues in the order briefed, and affirm the district court's judgment of conviction.

### Sufficiency of the Evidence

In his third through fifth issues on appeal, Thacker challenges the legal sufficiency of his conviction for driving while intoxicated. The Penal Code specifies that an individual commits

6

the offense of driving while intoxicated if he "is intoxicated while operating a motor vehicle in a public place." Tex. Penal Code § 49.04(a). In addition, the Penal Code provides that the term intoxicated means "not having the normal use of mental or physical faculties by reason of the introduction of alcohol, a controlled substance, a drug, a dangerous drug, a combination of two or more of those substances, or any other substance into the body." *Id.* § 49.01(2)(A). Under the Penal Code, the term "'[p]ublic place' means any place to which the public or a substantial group of the public has access and includes, but is not limited to, streets, highways, and the common areas of schools, hospitals, apartment houses, office buildings, transport facilities, and shops," *id.* § 1.07(a)(40), and in determinations regarding whether a location falls under that broad definition, "the relevant inquiry is whether the public has access to it," *Shaub v. State*, 99 S.W.3d 253, 256 (Tex. App.—Fort Worth 2003, no pet.); *see also Loera v. State*, 14 S.W.3d 464, 467 (Tex. App.—Dallas 2000, no pet.) (explaining that "access" means "'freedom of approach or communication; or the means, power, or opportunity of approaching, communicating, or passing to and from'" (quoting *Black's Law Dictionary* 13 (6th ed. 1990))).

In three separate issues, Thacker asserts that the evidence is insufficient to establish that he was "operating" a motor vehicle without the normal use of his faculties or that he was operating the vehicle in a "public place." When challenging the evidence regarding whether he operated a motor vehicle while he was intoxicated, Thacker notes that he was not seen driving his car and was instead found asleep in his car that had been parked off the roadway. Further, Thacker contends that no evidence was introduced establishing how long he had been parked at that location before the police found him, establishing how recently he drove his car, establishing whether he consumed alcohol prior to parking his car, or establishing whether he was intoxicated prior to

7

parking his car. *Cf. Stoutner v. State*, 36 S.W.3d 716, 721 (Tex. App.—Houston [1st Dist.] 2001, pet. ref'd) (stating that indicators that accused is intoxicated when police arrive on scene of accident, without more, do not establish that defendant was intoxicated when he drove). When challenging the evidence regarding whether the place where he parked his car was a public place, Thacker asserts that there was no evidence establishing that the railroad easement was open to the public or that the public had access to it.

Under a legal-sufficiency standard of review, appellate courts view the evidence in the light most favorable to the verdict and determine whether "*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). When performing this review, an appellate court must bear in mind that it is the factfinder's duty to weigh the evidence, to resolve conflicts in the testimony, and to make reasonable inferences "from basic facts to ultimate facts." *Id.*; *see also* Tex. Code Crim. Proc. art. 36.13 (explaining that "jury is the exclusive judge of the facts"). Moreover, appellate courts must "determine whether the necessary inferences are reasonable based upon the combined and cumulative force of all the evidence when viewed in the light most favorable to the verdict." *Hooper v. State*, 214 S.W.3d 9, 16-17 (Tex. Crim. App. 2007). Furthermore, appellate courts presume that conflicting inferences were resolved in favor of the conviction and defer to that resolution. *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007). In addition, courts must bear in mind that "direct and circumstantial evidence are treated equally" and that "[c]ircumstantial evidence is as probative as direct evidence in establishing the guilt of an actor" and "can be sufficient" on its own "to establish guilt." *Kiffe v. State*, 361 S.W.3d 104, 108 (Tex. App.—Houston [1st Dist.] 2011, pet. ref'd).

8

As summarized previously, the evidence presented at trial established that Thacker was intoxicated when the police found him. Both Officer Tucker and Officer Flugrath testified that they believed, based on their law-enforcement experience, that Thacker was intoxicated, *see id.* (providing that, in general, officer's testimony that accused was intoxicated is sufficient evidence to establish element of intoxication), and that Thacker smelled like alcohol, had bloodshot eyes, and was confused about where he was, *see Kirsch v. State*, 306 S.W.3d 738, 745 (Tex. Crim. App. 2010) (listing bloodshot eyes as indicator of intoxication); *Cotton v. State*, 686 S.W.2d 140, 143 n.3 (Tex. Crim. App. 1985) (stating that "odor of alcohol on the person" is evidence of intoxication). Moreover, Officer Tucker recalled that Thacker was found unconscious in his car and that he had a hard time rousing Thacker. In addition, Officer Tucker stated that Thacker was slurring his speech, was having trouble maintaining his balance, and was having difficulty performing simple tasks and answering questions, and Officer Flugrath explained that Thacker appeared to be disoriented. *See Kirsch*, 306 S.W.3d at 745 (explaining that swaying, stumbling, and slurring speech are indicative of intoxication). Furthermore, Officer Flugrath testified that when Thacker performed the horizontal-gaze-nystagmus test, he displayed all six indicators of intoxication, *see Plouff v. State*, 192 S.W.3d 213, 219 (Tex. App.—Houston [14th Dist.] 2006, no pet.) (noting that nystagmus test is valid scientific test), and Officer Flugrath related that Thacker refused to take several of the standardized field-sobriety tests and refused to voluntarily provide a blood sample, *cf. Bartlett v. State*, 270 S.W.3d 147, 153 (Tex. Crim. App. 2008) (noting that refusal to submit to breath test "tends to show a consciousness of guilt"); *see also Derrick v. State*, No. 05-14-00802-CR, 2015 Tex. App. LEXIS 4723, at *7 (Tex. App.—Dallas May 8, 2015, no pet.) (mem. op., not designated for publication) (explaining that

9

refusal to submit to breath test "can support the inference that he believed he would fail the test because he thought he was intoxicated"). Finally, Thacker was recorded saying that he had had too much to drink that night, apologizing for his mistake, and acknowledging that he was in trouble. *See Kirsch*, 306 S.W.3d at 745 (noting that admissions regarding how much accused had to drink can be indicative of intoxication).

Regarding whether Thacker was intoxicated when he operated the vehicle, the court of criminal appeals has explained that although the Penal Code does not define the word "operate," for sufficiency reviews, a person "'operates' a vehicle when 'the totality of the circumstances [] demonstrate that the defendant took action to affect the functioning of his vehicle in a manner that would enable the vehicle's use.'" *Kirsch v. State*, 357 S.W.3d 645, 650-51 (Tex. Crim. App. 2012) (quoting *Denton v. State*, 911 S.W.2d 388, 390 (Tex. Crim. App. 1995)); *see Priego v. State*, 457 S.W.3d 565, 569 (Tex. App.—Texarkana 2015, pet. ref'd) (stating that term operating is interpreted broadly). On the recordings, Thacker admits that he was driving and that no one else had been in the car that night, and Thacker's car's engine was running when he was found asleep in the driver's seat. Moreover, Thacker was discovered at approximately 11:30 p.m. around New Braunfels, and Thacker stated in one of the videos that he had left his friend's house in Boerne at approximately 10:30 p.m., that he had "enough" to drink at his friend's house, and that he made a mistake by leaving his friend's house to drive home. In addition, Thacker was recorded saying that he did not know how or why he parked his car. Perhaps most importantly, Thacker's car was found illegally and dangerously parked right alongside an active train track and in a location where he would have been hit had a train come down the track.

10

From this evidence as well as the evidence establishing Thacker's high level of intoxication during his interactions with the police, the jury could have reasonably inferred that Thacker was intoxicated when he operated the vehicle. *See Priego*, 457 S.W.3d at 570 (upholding conviction where evidence showed that defendant was only person in control of car when she was found unconscious in parking lot, where vehicle was parked but was running when defendant was found, where partially consumed bottle of alcohol was found, where evidence showed that police discovered defendant within approximately one hour of her driving to parking lot, and where defendant smelled like alcohol); *Murphy v. State*, No. 03-13-00281-CR, 2014 Tex. App. LEXIS 9339, at *4-6 (Tex. App.—Austin Aug. 22, 2014, pet. ref'd) (mem. op., not designated for publication) (determining that evidence was legally sufficient to support determination that defendant operated his vehicle while intoxicated where evidence showed that he was discovered unconscious behind wheel of his car with engine running in roadway at 4:00 a.m. within fifteen minutes of his arrival at intersection, that he did not have alcohol in car, that he smelled like alcohol, and that he displayed signs of intoxication during field-sobriety tests); *Dornbusch v. State*, 262 S.W.3d 432, 437-38 (Tex. App.—Fort Worth 2008, no pet.) (finding evidence sufficient where defendant was found asleep in driver's seat of idling vehicle parked in parking lot with headlights and radio on and where there was some evidence that vehicle was not in park); *Pope v. State*, 802 S.W.2d 418, 420 (Tex. App.—Austin 1991, no pet.) (determining that where intoxicated individual was found sleeping behind wheel of vehicle parked in middle of rural road with engine running, with lights on, and with empty beer can inside car, it was reasonable to infer that he drove there while intoxicated).

Regarding whether Thacker operated his vehicle in a public place, the evidence previously summarized established that Thacker was intoxicated when he was operating his vehicle,

11

that he drove his vehicle from Boerne to the railroad tracks where he was found, that he left his friend's house at around 10:30 p.m. and was found by the police at around 11:30 p.m., and that he remembered crossing the railroad tracks on the road. Accordingly, the jury could reasonably have inferred that Thacker "used a public road or street to reach his destination" while he was intoxicated. *See Loera*, 14 S.W.3d at 468. Moreover, Officer Tucker testified that the area around the train tracks was a public place because the public had access to the area and because there were no barriers. *Compare Shaub*, 99 S.W.3d at 256 (determining that privately owned marina was public place because public had access to it and because it was part of public park), *with Fowler v. State*, 65 S.W.3d 116, 119 (Tex. App.—Amarillo 2001, no pet.) (concluding that driveway to rural residence was not public place). Similarly, the video from Officer Tucker's car that was played for the jury shows that the train tracks at issue crossed a public roadway and that there were no fences around the tracks or signs indicating that the area around the tracks was private property.

Given our standard of review in a legal-sufficiency challenge and in light of the evidence presented during trial as well as the reasonable inferences that the jury was free to make from that evidence, we must conclude that the evidence is sufficient to establish that Thacker operated his motor vehicle in a public place while he was intoxicated. Accordingly, we overrule Thacker's third, fourth, and fifth issues on appeal.

**Motion to Suppress Evidence**

In his first issue on appeal, Thacker argues that the district court erred by "failing to grant [his] motion to suppress any and all evidence stemming from his detention which was made without a warrant" because Officer Flugrath "did not have [an] objective basis for the detention."

12

During the suppression hearing, Officer Tucker and Officer Flugrath testified regarding their interactions with Thacker on the night in question and provided testimony that was similar to what they gave during the trial. *See Black v. State*, 362 S.W.3d 626, 635 (Tex. Crim. App. 2012) (providing that "appellate review of [a trial court's] ruling on the motion to suppress is ordinarily limited to that evidence presented at the pretrial hearing—the evidence that was before the court at the time of its decision"). In his testimony, Officer Tucker said that he was dispatched to the railroad tracks at around 11:15 p.m. after someone called 911 about Thacker's car, observed Thacker's car "about 20 feet off the roadway and right near the railroad tracks," and determined that the manner in which the car had been parked was against the law. In fact, he said that if the car was not moved, a train coming down the tracks would have hit it. Accordingly, he explained that his first concern was public safety and getting "the car out of the way so we don't have an accident out here."

Moreover, Officer Tucker recalled that the car was running, that Thacker was "slumped over . . . towards the center console and sound asleep," that he made several attempts to wake Thacker by shaking the car and yelling at him, that Thacker was incoherent after waking up and was "unsure of his surroundings," that Thacker smelled like alcohol, that he helped Thacker out of the car, that Thacker was unsteady on his feet, that Thacker used the door "as a crutch to help him stay on his feet," that he escorted Thacker away from the tracks to his patrol car, that Thacker had to hold onto the patrol car to maintain his balance, and that he drove Thacker's car away from the tracks. Furthermore, Officer Tucker recalled that Thacker stated that he was visiting a friend in Boerne and thought that he was still in Boerne, that his speech was slurred, and that his eyes were bloodshot and looked glassy. In addition, Officer Tucker explained that based on his observations of Thacker, the

13

focus of the encounter changed from the public safety concern about the car being parked by a railroad track to an investigation for driving while intoxicated and agreed that Thacker was being detained for "an investigation to see if he was driving while intoxicated." Finally, Officer Tucker stated that Officer Flugrath arrived on the scene shortly after he did and took over the investigation and that he found a bottle of alcohol in Thacker's car when he inventoried the car after Officer Flugrath arrested Thacker.

During Officer Tucker's testimony, the video recording from his police car discussed in the previous issue was played.

In his testimony during the suppression hearing, Officer Flugrath explained that he had been certified to perform field-sobriety tests, including the horizontal-gaze-nystagmus test. Moreover, he recalled that when he arrived on the scene, he saw Thacker talking to Officer Tucker, that Thacker "appeared very disoriented," that he set up his camera for sobriety testing, that Thacker's eyes were bloodshot and glassy, that Thacker smelled like alcohol, and that he asked Thacker to stand in front of the patrol car "so I could continue the interview." Regarding the interview, Officer Flugrath recalled that Thacker apologized and stated he had "gone farther than he needed to go," that he was coming from a friend's house, that he arrived at his friend's house at 9:30 p.m., that he had "[e]nough" to drink at his friend's house, that he had one drink at his friend's house, that he was the only person in the car, that he remembered driving over the tracks but did not remember "ending up exactly where he did," and that he had made a big mistake. Officer Flugrath testified that he asked Thacker to perform field-sobriety tests, that the horizontal-gaze-nystagmus test showed six of six indicators of intoxication, that Thacker elected not to try the walk-and-turn

14

test and the one-leg-stand test, that he repeated a string of letters and paused when he recited the alphabet, and that he refused to provide a voluntary blood sample. Furthermore, Officer Flugrath explained that based on his observations of Thacker, on the results of the field-sobriety testing, and on Thacker's admissions that he had been driving, he determined that Thacker had been driving while intoxicated and arrested him.

At the end of the suppression hearing, the district court explained that, "under these circumstances," the officers had a duty "to investigate the circumstances of this vehicle and, upon making contact with the driver in this particular instance, had, also, the right to ask him specific questions . . . with regards to where he was, how he got there, . . . which certainly would, to my mind, at least, place him . . . not only in a public place, but he had to be in a public place to get there." Accordingly, the district court denied the motion to suppress.

On appeal, Thacker does not challenge the propriety of Officer Tucker initiating contact with him and moving him to a safer location. *See Gonzales v. State*, 369 S.W.3d 851, 854 (Tex. Crim. App. 2012) (explaining that as part of duty to serve and protect, police may stop and assist person whom reasonable person would believe is in need of help under totality of circumstances). Instead, Thacker asserts that Officer Flugrath did not have reasonable suspicion to detain him or to ask him to perform field-sobriety tests. *See Martinez v. State*, 236 S.W.3d 361, 369 (Tex. App.—Fort Worth 2007, pet. ref'd, untimely filed) (explaining that routine traffic stops are similar to investigative detentions); *Neal v. State*, 256 S.W.3d 264, 280 (Tex. Crim. App. 2008) (providing that investigative detentions must be supported by reasonable suspicion). In fact, Thacker insists that Officer Flugrath's decision to detain him was based only on Officer Flugrath's

15

observation that Officer Tucker was questioning Thacker in a parking lot and urges that Officer Flugrath did not know when he drove on the highway or know if he was legally intoxicated when he drove. Moreover, Thacker insists that the evidence in this case simply indicated that he "parked along side the railroad track, drank rum from the bottle, then fell asleep."

"Appellate courts review a trial court's ruling on a motion to suppress by using a bifurcated standard, giving almost total deference to the historical facts found by the trial court and analyzing de novo the trial court's application of the law." *State v. Le*, 463 S.W.3d 872, 876 (Tex. Crim. App. 2015). Under that standard, the record is "viewed in the light most favorable to the trial court's determination, and the judgment will be reversed only if it is arbitrary, unreasonable, or 'outside the zone of reasonable disagreement.'" *State v. Story*, 445 S.W.3d 729, 732 (Tex. Crim. App. 2014) (quoting *State v. Dixon*, 206 S.W.3d 587, 590 (Tex. Crim. App. 2006)). If a trial court does not make express findings of fact, appellate courts view the evidence in the light most favorable to the ruling and assume that the trial court made implicit findings that are supported by the record. *Crain v. State*, 315 S.W.3d 43, 48 (Tex. Crim. App. 2010). Moreover, the trial court's ruling on the motion will be upheld if it is correct under any theory of law regardless of whether the trial court based its ruling on that theory. *Story*, 445 S.W.3d at 732. Further, the trial court is the exclusive and sole judge of the credibility of the evidence and witnesses presented during the suppression hearing, "particularly where the motion is based on the voluntariness of a confession," and "great deference is accorded to the trial court's decision to admit or exclude such evidence." *Delao v. State*, 235 S.W.3d 235, 238 (Tex. Crim. App. 2007). Accordingly, the trial court's ruling will only "be overturned on appeal where a flagrant abuse of discretion is shown." *Id.*

16

Although Thacker's interaction with Officer Tucker did not originate from a traffic stop, the interaction turned into an investigative detention at some point after Thacker's car was moved to a safe location. Investigative detentions are less intrusive than arrests, *Derichsweiler v. State*, 348 S.W.3d 906, 916 (Tex. Crim. App. 2011), and must be supported by reasonable suspicion, which "exists if the officer has specific articulable facts that, when combined with rational inferences from those facts, would lead him to reasonably suspect that a particular person has, or soon will be, engaged in criminal activity," *Neal*, 256 S.W.3d at 280. "The reasonableness of a temporary detention must be considered in view of the totality of the circumstances at the inception of the encounter." *Tanner v. State*, 228 S.W.3d 852, 855 (Tex. App.—Austin 2007, no pet.). Moreover, if during a valid detention, "the officer develops reasonable suspicion that the detainee is engaged in criminal activity, prolonged or continued detention is justified." *Haas v. State*, 172 S.W.3d 42, 52 (Tex. App.—Waco 2005, pet. ref'd); *see also State v. Woodard*, 341 S.W.3d 404, 414 (Tex. Crim. App. 2011) (explaining that information known to officer gave him reasonable suspicion to detain and administer field-sobriety tests).

As a preliminary matter, we note that Officer Tucker testified that the manner in which Thacker parked his car was against the law and that his car was within 20 feet of where the train tracks crossed a public roadway, and the Transportation Code prohibits individuals from parking "on a railroad track" or parking "within 50 feet of the nearest rail or railroad crossing." Tex. Transp. Code § 545.302(a)(8), (c)(1). Accordingly, Officer Tucker had reasonable suspicion to conclude that Thacker had committed a traffic violation when he found Thacker parked right next to a train track and within 20 feet of a railroad crossing. *Cf. Bullock v. State*, 426 S.W.3d 226, 229

17

(Tex. App.—Houston [1st Dist.] 2012, no pet.) (providing that "[a] law enforcement officer may lawfully stop and detain a motorist who commits a traffic violation"); *Vasquez v. State*, 324 S.W.3d 912, 919 (Tex. App.—Houston [14th Dist.] 2010, pet. ref'd) (noting that police officer may initiate traffic stop if he has reasonable basis to believe that individual has committed traffic offense). Moreover, Officer Tucker found Thacker asleep in his car at around 11:30 p.m., and in his interactions with Thacker prior to and immediately after he moved Thacker's car, Officer Tucker noticed that Thacker smelled like alcohol, was slurring his speech, had bloodshot and glassy appearing eyes, was unsteady on his feet, and did not know where he was. Accordingly, Officer Tucker could have reasonably determined that Thacker may have committed the offense of driving while intoxicated, *see Texas Dep't of Pub. Safety v. Gilfeather*, 293 S.W.3d 875, 880 (Tex. App.—Fort Worth 2009, no pet.) (explaining that "[b]loodshot eyes, an odor of alcohol on a person's breath, and unsteady balance are all classic symptoms of intoxication"); *see also Maxwell v. State*, 253 S.W.3d 309, 314 (Tex. App.—Fort Worth 2008, pet. ref'd) (determining that probable cause was present when, among other things, defendant was speeding at 2:00 a.m.), and had reasonable suspicion to detain him for further investigation, *see Haas*, 172 S.W.3d at 52; *see also Rubeck v. State*, 61 S.W.3d 741, 745 (Tex. App.—Fort Worth 2001, no pet.) (explaining that once officer makes bona fide stop for traffic offense, he may investigate other offenses that he reasonably suspects have occurred).

Moreover, although Thacker contends that Officer Flugrath did not personally have reasonable suspicion to detain him for field-sobriety testing, reasonable suspicion determinations in situations "in which several officers are cooperating" are made based on "their cumulative information." *See State v. Duran*, 396 S.W.3d 563, 569 n.12 (Tex. Crim. App. 2013); *see also*

18

*Derichsweiler*, 348 S.W.3d at 914 (stating that "the detaining officer need not be personally aware of every fact that objectively supports a reasonable suspicion to detain; rather, 'the cumulative information known to the cooperating officers at the time of the stop is to be considered in determining whether reasonable suspicion exists'") (citations omitted). In any event, Officer Flugrath was aware of where Thacker had parked his car and testified that when he interacted with Thacker, Thacker was disoriented, had bloodshot and glassy eyes, smelled like alcohol, admitted to having had "enough" to drink at his friend's house before attempting to drive home, stated that he did not know how he ended up alongside the railroad track, and apologized for his actions.[3]

In light of the preceding, we conclude that reasonable suspicion existed authorizing Officer Flugrath to detain Thacker for the purpose of investigating whether Thacker had committed the offense of driving while intoxicated and to ask Thacker to submit to field-sobriety testing. Accordingly, we conclude that the district court did not abuse its discretion by denying Thacker's motion to suppress and overrule Thacker's first issue on appeal.

---

[3] Although Thacker does not assert that the length of his detention was improper in this issue, we note that the video played during the suppression hearing reveals that Officer Flugrath began talking with Thacker and asking him questions related to an investigation for driving while intoxicated approximately twelve minutes after Officer Tucker first found Thacker in his car and that there was no gap between when Officer Tucker interviewed Thacker and when Officer Flugrath took over the investigation. *Cf. Belcher v. State*, 244 S.W.3d 531, 540-42 (Tex. App.—Fort Worth 2007, no pet.) (determining that detaining individual for additional 27 minutes after detaining him for twelve minutes to perform investigation so that another police officer could perform investigation regarding whether defendant was driving while intoxicated was not unreasonable under circumstances); *Hartman v. State*, 144 S.W.3d 568, 570, 573-74 (Tex. App.—Austin 2004, no pet.) (determining that five-to-fifteen-minute delay in investigation primarily so that another officer could bring a video camera to the scene was reasonable because delay furthered legitimate law-enforcement purposes). Moreover, in the time between when Officer Tucker first found Thacker and when Officer Flugrath arrived, Officer Tucker spent several minutes attempting to wake Thacker up, moving Thacker to a safe location, and driving Thacker's car away from the train tracks.

**Motion to Suppress Statements for Failure to Provide Miranda Warnings**

In his second issue on appeal, Thacker contends that the district court erred by "failing to grant [his] motion to suppress oral statements" that he made to the officers because those statements were made during custodial interrogations and because he was not "warned of his rights" and did not voluntarily waive those rights before he made those statements. *See Miranda v. Arizona*, 384 U.S. 436, 479 (1966). When presenting this claim, Thacker asserts that the stop at issue "was not an investigative detention based on a reasonable suspicion that a crime was being committed" because no one observed him "engage in activity that might be associated with a traffic offense." Moreover, Thacker asserts that because the field-sobriety testing and questioning of the officers occurred in a private area in the middle of the night and because the questioning was not brief, he "felt completely at the mercy of the police and would not have expected to be able to proceed along his way if he passed the field sobriety tests." Accordingly, he insists that he was in custody when the police questioned him and, therefore, that his "statements were improperly admitted against him at trial."[4]

---

[4] In the summary portion of his brief but not in his argument section, Thacker notes that Officer Tucker agreed during trial that after he interacted with Thacker and smelled alcohol, he believed that an intoxication investigation would have to be performed. However, that testimony was not before the district court when it made its ruling on the motion to suppress. *See Black v. State*, 362 S.W.3d 626, 635 (Tex. Crim. App. 2012). In any event, we can find no support for the proposition that a police officer must provide an individual with *Miranda* warnings at the moment the officer develops, through his interactions with the individual, an internalized belief that the individual will be the subject of an investigation for driving while intoxicated. *See Berkemer v. McCarty*, 468 U.S. 420, 442 (1984) (determining that police were not required to give motorist *Miranda* warnings even though officer "apparently decided as soon as [the motorist] stepped out of his car that [the motorist] would be taken into custody and charged with a traffic offense").

In the previous issue, we set out the standard by which appellate courts review a ruling on a motion to suppress. *See Le*, 463 S.W.3d at 876; *Story*, 445 S.W.3d at 732; *Delao*, 235 S.W.3d at 238. In presenting his claims, Thacker argues that his interactions with the police officers prior to his arrest constituted a custodial interrogation rather than an investigative detention. *See Ripkowski v. State*, 61 S.W.3d 378, 381-82 (Tex. Crim. App. 2001) (noting that determination regarding whether questioning constituted custodial interrogation is mixed question of law and fact, that appellate courts defer to trial court findings turning on evaluation of credibility and demeanor, and that appellate courts review de novo application of law to facts that do not depend on credibility and demeanor). An interaction between a law-enforcement officer and an individual is an investigative detention when the officer, "under a display of law enforcement authority, temporarily detains the person for the purposes of an investigation." *See State v. Garcia*, 25 S.W.3d 908, 911 (Tex. App.—Houston [14th Dist.] 2000, no pet.); *see also Crain*, 315 S.W.3d at 49 (explaining that investigative detention occurs when people yield to law-enforcement officer's show of force under reasonable belief that they are not free to leave). Although an investigative detention is a type of seizure, it involves less restraint than an arrest, *Berkemer v. McCarty*, 468 U.S. 420, 437-40 (1984); *Francis v. State*, 922 S.W.2d 176, 178 (Tex. Crim. App. 1996) (Baird, J., concurring), and the right to receive *Miranda* warnings is not triggered by an investigative detention, *see Simmons v. State*, No. 14-07-00301-CR, 2008 Tex. App. LEXIS 4907, at *9 (Tex. App.—Houston [14th Dist.] July 1, 2008, no pet.) (mem. op., not designated for publication); *see also Hernandez v. State*, 107 S.W.3d 41, 48 (Tex. App.—San Antonio 2003, pet. ref'd) (explaining that statements made by defendants during roadside investigation for driving while intoxicated were admissible even

21

though no *Miranda* warnings were provided because defendant was not in custody when he made statements). During the course of an investigative detention, police officers may use the amount of force reasonably necessary to effectuate the purpose of the detention, including investigating or maintaining the status quo. *See Mount v. State*, 217 S.W.3d 716, 724 (Tex. App.—Houston [14th Dist.] 2007, no pet.).

In contrast, an individual is in custody when he is placed under arrest or when, under all of the objective circumstances, a reasonable person would believe that his freedom of movement has been restricted to the degree associated with a formal arrest. *Dowthitt v. State*, 931 S.W.2d 244, 254 (Tex. Crim. App. 1996); *see Stansbury v. California*, 511 U.S. 318, 322 (1994); *see also* Tex. Code Crim. Proc. art. 15.22 (setting out when person has been arrested). An investigatory detention may transform into a custodial detention if the force used by the police officers exceeds that reasonably necessary to fulfill the goal of the investigatory stop. *See Mount*, 217 S.W.3d at 724-25; *see also id.* at 724 (explaining that both custodial interrogation and investigative detention involve restraint of liberty). An individual is in custody when he "is physically deprived of his freedom in any significant way," when he is told that he cannot leave by law-enforcement personnel, when law-enforcement personnel "create a situation that would lead a reasonable person to believe that his freedom of movement has been significantly restricted," and when law-enforcement personnel "manifest[] to the suspect" that probable cause to arrest exists but do not tell the individual "that he is free to leave" under circumstances that "would lead a reasonable person to believe that he is under restraint to the degree associated with an arrest." *Dowthitt*, 931 S.W.2d at 255; *see State v. Saenz*, 411 S.W.3d 488, 496 (Tex. Crim. App. 2013). "The first three situations require

22

that the restriction on a suspect's freedom of movement must reach 'the degree associated with an arrest' instead of an investigative detention." *Saenz*, 411 S.W.3d at 496 (quoting *Dowthitt*, 931 S.W.2d at 255). When asked to determine whether an interaction is an investigative detention or an arrest, courts look at the length of the detention, the amount of force used, and whether the officers did in fact conduct an investigation. *Mount*, 217 S.W.3d at 724. If an individual is in custody and is subjected to questioning without being provided with *Miranda* warnings, his statements are not admissible. *Miranda*, 384 U.S. at 479.

As an initial matter, we note that neither Thacker's motion to suppress nor his appellate brief specifies which of the statements that he made to the police should have been suppressed and that Thacker did not identify during the hearing on the motion which statements he was challenging the admissibility of. *Cf. Gonzalez v. State*, 783 S.W.2d 774, 778 (Tex. App.—Corpus Christi 1990, no pet.) (noting necessity of making specific objections when accused made more than one statement that could be subject of motion to suppress). In any event, as discussed in the previous issue, based on the manner and location where Thacker parked his car, Officer Tucker had reasonable suspicion to believe that Thacker had committed a traffic offense, and Officer Tucker developed reasonable suspicion to believe that Thacker had committed the offense of driving while intoxicated through his interactions with Thacker. Accordingly, the officers had reasonable suspicion to detain Thacker to investigate whether Thacker had committed the offense of driving while intoxicated.

Moreover, nothing in the testimony or the video recording presented during the suppression hearing suggested that the investigative detention initiated by Officer Tucker escalated

23

to a custodial detention prior to Thacker's arrest, which occurred after he performed various field-sobriety tests and refused to provide a blood sample. *See State v. Stevenson*, 958 S.W.2d 824, 828-29 (Tex. Crim. App. 1997) (determining that individual was not in custody during roadside investigation for driving while intoxicated); *Hutto v. State*, 977 S.W.2d 855, 858 (Tex. App.—Houston [14th Dist.] 1998, no pet.) (concluding that detention for field sobriety testing and questioning did not convert roadside stop into arrest). In addition, although Officer Tucker recalled that Thacker was not free to leave, he explained that Thacker was being detained to allow the officers to investigate whether Thacker had committed a traffic violation and whether Thacker had committed the crime of driving while intoxicated. Also, the video shows that after Officer Tucker found Thacker in his car, the officer spent approximately five minutes trying to wake Thacker up and moving Thacker and his vehicle to safety. Further, the video chronicles that after Officer Tucker moved Thacker to safety, Officer Tucker questioned Thacker for approximately seven minutes regarding his identity, regarding his whereabouts that evening, and regarding whether he had had anything to drink that night. At the end of his interaction with Thacker, Officer Tucker told Thacker that Officer Flugrath would be continuing the investigation, and Officer Flugrath immediately took over the investigation. During his exchange with Thacker, Officer Tucker never stated that Thacker was going to be arrested or that he had probable cause to arrest Thacker.

Similarly, nothing in the testimony presented during the suppression hearing suggested that Officer Flugrath told Thacker that he was under arrest or communicated that he had probable cause to arrest Thacker until after Thacker finished performing various field-sobriety tests. Although the video presented during the suppression hearing did not capture Officer Flugrath's investigation

24

or Thacker's performance on the field-sobriety tests, Officer Tucker and Officer Flugrath provided testimony indicating that Thacker was arrested approximately 25 to 30 minutes after Officer Tucker first noticed Thacker asleep in the car, and the video shows that Officer Flugrath began his interview approximately twelve minutes after Officer Tucker first found Thacker.

Finally, although Thacker specifically urges that the investigation was custodial in nature due to the fact that it occurred late at night and in a parking lot near the railroad tracks, the timing and location of the investigation resulted from when Thacker chose to drive and where he chose to park his car, and even though Thacker suggests that the parking lot was not a public place, it was a safe place that appeared open to the public and was near and connected to the public roadway Thacker had driven on prior to parking his car along the train tracks. *State v. Waldrop*, 7 S.W.3d 836, 837, 839 (Tex. App.—Austin 1999, no pet.) (determining that statements made during interaction with police after traffic stop was initiated at midnight should have been admitted, in part, because defendant was detained "along a public street and not in a police dominated atmosphere").

For all of these reasons, particularly the evidence establishing the relatively brief nature of the detention, *see Belcher v. State*, 244 S.W.3d 531, 540-42 (Tex. App.—Fort Worth 2007, no pet.); *Hartman v. State*, 144 S.W.3d 568, 573-74 (Tex. App.—Austin 2004, no pet.), the amount of force used by the officers, and the fact that the detention was for the purpose of investigating whether Thacker had committed the offense of driving while intoxicated after the officers developed reasonable suspicion to believe that he had, we conclude that the district court did not abuse its discretion by denying Thacker's motion to suppress statements that he made during his interactions with Officer Tucker and Officer Flugrath before he was arrested. Accordingly, we overrule Thacker's second issue on appeal.

**Thacker's Punishment Does Not Constitute Cruel and Unusual Punishment**

In his sixth issue on appeal, Thacker urges that his life sentence is "'grossly disproportionate' to the offense that he committed and thus constitutes cruel and unusual punishment."

Recently, this Court addressed the issue of whether a life sentence imposed for the offense of driving while intoxicated when that offense was "enhanced by two prior felony convictions for the offense of driving while intoxicated" was cruel and unusual punishment. *See Davidson v. State*, No. 03-13-00708-CR, 2014 Tex. App. LEXIS 8359, at *1 (Tex. App.—Austin Aug. 1, 2014, no pet.) (mem. op., not designated for publication). In reaching our ultimate conclusion that the sentence did not constitute cruel and unusual punishment, we noted that cases have held "that a sentence of life imprisonment or of similar length is not grossly disproportionate to a felony offense that is committed by a habitual offender, even when the felony is not inherently violent in nature." *Id.* at *2. Accordingly, we determined that the imposition of a life sentence for the defendant's "repeated commission of the offense of driving while intoxicated, a dangerous offense that placed her life and the lives of others in jeopardy," did not constitute cruel and unusual punishment. *Id.* at *2-3.

For those same reasons, we conclude that Thacker's life sentence did not constitute cruel and unusual punishment and overrule his sixth issue on appeal. *See id.*; *see also Winchester v. State*, 246 S.W.3d 386, 390-91 (Tex. App.—Amarillo 2008, pet. ref'd) (determining that consecutive life sentences for offenses of failure to appear and retaliation were not grossly disproportionate given defendant's criminal history); *Vrba v. State*, 69 S.W.3d 713, 716, 724-25 (Tex. App.—Waco 2002, no pet.) (concluding that imposition of 60-year sentence for offense of driving while intoxicated was not grossly disproportionate given defendant's prior criminal history).

26

**CONCLUSION**

Having overruled all of Thacker's issues on appeal, we affirm the district court's judgment of conviction and sentence.

_____

David Puryear, Justice

Before Justices Puryear, Goodwin, and Bourland

Affirmed

Filed:   November 6, 2015

Do Not Publish